<div style="margin-right:margin"><span style="float:right">1842.

Bangs
v.
Strong.</span></div>

---

### Bangs & Allcott *vs.* Strong and others.

Any valid and binding agreement between the creditor and the principal debtor, or other active interference of the creditor, whereby the surety may be injured, or subjected to increased risk, or be deprived of or delayed in the assertion of his equitable claim to pay the debt and become subrogated to the rights and remedies of the creditor against such principal debtor, if it is made or done without the assent of such surety, will in equity discharge him from his liability.

But mere delay, or a promise of delay not founded upon a new consideration, or the taking of a collateral security from the principal debtor without any stipulation to extend the time of payment of the original debt, will not discharge the surety.

Although the agreement with the principal debtor is executed by only one of two joint creditors, and without the consent of his co-creditor, it will nevertheless operate as a discharge of the surety, if it has the effect to prejudice the right of such surety to substitution, without his assent.

But where such agreement is obtained from the creditor, by the principal debtor,

upon the false representation of the latter that the surety had authorized him to make it, and the surety afterwards refuses to assent to the agreement, the creditor will be at liberty to repudiate it ; in which case the surety will not be discharged, unless the creditor proceeds to act under the agreement after notice that it was entered into without the authority of the surety and that such surety had refused to assent to the same.

The creditor may, without impairing his right against the surety, stipulate with the principal debtor to give him time of payment upon condition that the surety assents to the same; and in such case if the surety refuses to assent to the agreement, such agreement will be inoperative.

Where an answer which accompanies a plea covers any part of the relief embraced by such plea, it will overrule the plea.

October 21. THIS was an appeal by Maltby Strong, one of the defendants, from an order of the vice chancellor of the eighth circuit overruling a plea. The complainants were judgment creditors of the defendants J. Strong and M. Strong, and the bill was filed to reach their property after the return of an execution unsatisfied, and to set aside certain conveyances made by them to the other defendants, as fraudulent. · The bill, after setting forth the other matters usually alleged in such suits and the fraudulent transfers of property, stated that, as the complainants were informed, the defendants J. Strong and M. Strong *pretended* that in consequence of an agreement made between Alcott, one of the complainants, professing to act in behalf of himself and Bangs his co-complainant, of the one part, and J. Strong acting for himself and M. Strong of the other part, and dated in August, 1839, the defendant M. Strong was discharged from all obligation by reason of the judgment, the contrary whereof the complainants charged to be the truth. The bill also stated that the agreement, if made, was made with the knowledge, assent, and approbation of M. Strong, or that he was informed of it both before and after the making thereof and made no objection thereto ; or if not, that it was procured by the fraudulent professions and representations of the said J. Strong, and that such agreement had not been performed on the part of the defendants J. and M. Strong.

The defendant M. Strong, as to all the *relief* sought by the bill as against him, and as to all the discovery except

as to his pretence and claim to a discharge under the agreement of August 1839 and the charges in the bill in relation to that agreement, pleaded in bar that the debt for which the judgment set forth in the bill was recovered was one in which he was a mere surety for his co-defendant J. Strong, in a bond to the complainants, to secure such advances as they might make to the latter. And the plea further stated that on the 12th of August, 1839, an agreement was made between Alcott, one of the complainants, and J. Strong, under their hands and seals, and reciting the recovery of the judgment mentioned in the complainants' bill and the parties to such judgment, whereby it was agreed between the said J. Strong and Alcott, *in behalf of the respective parties to that judgment,* that J. Strong should turn out and cause to be conveyed to Bangs & Alcott, in payment of their judgment, certain specified real estate in Rochester at the appraisal of three citizens of that place, less ten per cent, subject to certain incumbrances on a part of such property to be paid by Bangs & Alcott; which real estate was also subject to incumbrances to the amount of about $2500 not then payable, and which J. Strong agreed to pay when they should become due; and that the judgment should remain and continue in force as a security for the payment of a part of the incumbrances which J. Strong had agreed to pay, and also to secure the balance, if any, that should still remain due on the judgment, and which was to be paid within ten months; and for the non-performance of which agreement the party failing to perform was to pay the other $1000 as liquidated damages. M. Strong averred in his plea that the agreement was made and executed without his consent, authority, assent, knowledge, or approbation, and that it had been wholly, *or in part,* performed by J. Strong; and he also traversed the allegations in the bill that he was informed of the agreement before the making thereof and made no objection thereto, or that the agreement was procured by the fraudulent professions and representations of J. Strong.

The plea was also supported by an answer, admitting that

the defendant M. Strong had given out and pretended that by virtue of the agreement mentioned in the bill he was wholly discharged from all obligation by reason of the complainants' judgment, and averring and insisting that he was so discharged, but denying the several allegations in the bill traversed by his plea. His answer also stated, that after the making of the agreement he was informed of it by the attorney of Bangs & Alcott, who told him that he was wholly discharged from the judgment and need not give himself any further trouble about it ; and that when he was afterwards informed of such agreement by Alcott and requested to sign an instrument ratifying the same, he refused to sign it, and told Alcott that he considered the agreement as a discharge of all his liability on account of the judgment. In addition to this, the answer proceeded to state that subsequent to the agreement of August, 1839, and in part performance of it, J. Strong caused to be conveyed to the complainants a part of the real estate specified therein, and that certain sums of money had been received by the complainants *which ought to be applied towards the payment of the judgment mentioned in their bill;* setting forth a description of the lands which had been appraised under the agreement, and certain monies or securities for money which had been received to apply on the judgment, as contained in the two subsequent instruments signed by Alcott, modifying the original agreement. But the answer admitted, upon the information and belief of this defendant, that the agreement had not been fully performed.

The vice chancellor decided that the agreement set out in the plea did not prevent the complainants from immediately issuing their execution and collecting the whole of their judgment, and that the rights of Maltby Strong as a surety for his co-defendant in the judgment were not altered or affected by the agreement. He therefore overruled the plea, without examining the objections which had been made to the form thereof. And from his order over-

ruling the plea the defendant M. Strong appealed to the chancellor.

*J. W. Gilbert*, for M. Strong the appellant. The defence is well pleaded. (*Stor. Eq. Pl.* 511 *to* 521, 532. *Mitford*, 240 *to* 244. *Wigram on Dis.* 13 *Law Lib.* 12 *to* 17, 82, 83. *Lube's Eq. Pl.* 182, *et seq.* 3 *Paige*, 273.) Maltby Strong is a mere surety for Joseph Strong, and the agreement set up in the plea having been executed without his consent, he is discharged. The complainants, by means of the agreement, disabled themselves from ceding to M. Strong all their remedies against J. Strong; and whether this disability continued for a long or short period, it operated as a complete discharge. (*Poth. on Ob. p.* 2, *c.* 6, *art.* 1, § 6. *Code Nap.* 2037. *King* v. *Baldwin*, 2 *Johns. Ch. R.* 560. *Hayes* v. *Ward*, 4 *Id.* 130. 3 *Wheat.* 157, *n.*) Time was given by the agreement to J. Strong. (*Gahn* v. *Niemcewicz*, 11 *Wend.* 320. *Ev. App. to Poth. No.* 5. · 3 *Wash. C. C. R.* 75. 8 *East*, 576.) A new credit was given to J. Strong alone; and this operated as a novation of the debt. (*Skip* v. *Edwards*, 9 *Mod.* 438. *Cremer* v. *Higginlaw et al.* 1 *Mason C. C. R.* 339. *Bell's Law Dic. tit. Novation.*)

*F. M. Haight*, for the respondents. The agreement set forth in the plea is void for want of mutuality. If the agreement set up in the plea is deemed binding on the complainants and Joseph Strong, it does not affect the rights of Maltby Strong, or discharge him from his liability upon the judgment against him and J. Strong. The plea is defective in not denying the allegation that Maltby Strong was informed of the agreement, before and after the making thereof, and made no objection to the same. The plea is defective in alleging, in the alternative, that the agreement was wholly or in part performed. And it is no answer to the discovery sought by the bill in relation to the fraud committed by J. and M. Strong in the execution

&c. of the assignment by them and their wives to E. Peck. The plea is also overruled by the answer.

THE CHANCELLOR. The general rules upon which courts of equity proceed in decreeing a surety discharged by a new contract, changing the rights and liabilities of the principal debtor without the consent of the surety, are correctly stated in the opinion of the vice chancellor. The principal question to be considered therefore is whether those rules have been correctly applied by him to the facts of this case.

Any valid and binding agreement between the creditor and the principal debtor, or other active interference of the creditor, whereby the surety may be injured, or subjected to increased risk, or be deprived of or delayed for a time in the assertion of his equitable claim to pay the debt and become subrogated to the rights and remedies of the creditor against such principal debtor, if it is made or done without the assent of such surety, will in equity discharge him from his liability. But mere delay, or a promise of delay not founded upon a new consideration, or the taking of a collateral security from the principal debtor without any stipulation to extend the time of payment of the original debt, will not discharge the surety. (*Neimcewicz* v. *Gahn*, 3 *Paige's Rep.* 614 ; 11 *Wend. Rep.* 312, *S. C. Rathbone* v. *Warren*, 10 *Johns. Rep.* 597. *Offut* v. *Hindsley*, 9 *Louis. Rep.* 12. *Sneed's Ex'r* v. *White*, 3 *J. J. Marsh.* 525. *Clark* v. *Patton*, 4 *Idem*, 33. *Alcock* v. *Hill*, 4 *Leigh's Rep.* 622. *Steele* v. *Boyd*, 5 *Idem*, 547.)

In the case under consideration, considering the agreement as having been made between Alcott and J. Strong only, and without any reason on the part of the former to suppose that the latter was authorized to contract for his co-defendant in the judgment as well as himself, this was unquestionably a valid and binding contract by which the rights of the parties to the judgment were materially changed. Although no time was given for the conveyance of the lands, the contract necessarily implied that all pro-

ceedings upon the judgment should be stayed for a reasonable time for the appraisal of the property and the execution of the necessary conveyances. And if the complainants, after the making of that agreement, had taken out execution upon their judgment and proceeded to collect the whole amount out of the property of J. Strong, or his surety, it would have been a palpable violation of the spirit and intent of both parties to the contract of August, 1839. Besides ; the agreement, in terms, provided for an extension of credit for the balance due on the judgment beyond the appraised value of the lands after deducting the ten per cent from the amount of such appraisal. And there was also a necessary extension of credit on so much of the judgment as was to remain as a security for the payment of incumbrances upon the lands until the monies secured by those incumbrances should become due ; as that was the time specified in the agreement when J. Strong was to pay off and discharge the incumbrances. What then would have been the rights of the surety, after that agreement was executed, if he had thought proper to pay the complainants' debt and to become substituted in their place as to their rights and remedies against the principal debtor ? Certainly he would have been compelled to wait until the lands could be appraised. And then if J. Strong thought proper to fulfil the agreement on his part, by conveying the real estate at such appraisal less the ten per cent, and subject only to the incumbrances specified in the agreement as payable by the complainants or for which the judgment was to remain as an indemnity, the surety would be compelled to take his pay in the land instead of money ; and subject, for a time at least, to the lien of the incumbrances of which J. Strong had assumed the payment. Nor could he have taken out execution to enforce the payment of the residue of the judgment until the expiration of the ten months mentioned in the agreement.

The fact that the agreement was only executed by one of the complainants, even if it was made without consulting the other, would not prevent its operating as a discharge

of the surety, where it had the effect to prejudice his right to substitution, without his assent. (*Clark* v. *Patton,* 4 *J. J. Marsh. Rep.* 33.) Whether the agreement of August 1839, therefore, was valid and binding upon the complainants, so as to discharge the surety who afterwards refused to assent to the same, depends upon the question whether it was entered into by Alcott without his having any good reason to suppose that J. Strong was acting without authority from his co-defendant in the judgment, if he was so in fact, and whether, as alleged in the bill, it was procured by the fraudulent professions and representations of J. Strong, which induced Alcott to believe he had such authority. In the latter case, as the surety refused to assent to the new arrangement, the complainants would be authorized to repudiate the same. And in that case the surety would not be discharged unless the complainants had acted under the agreement after they were aware of the fact that it had been entered into without authority, and that the surety refused to assent to the same. For the creditor may always stipulate with the principal debtor to give him time of payment upon condition that the surety assents to the agreement, so that the right of the creditor as against the surety shall not be impaired. And in such case if the surety refuses to assent to the new arrangement, the agreement is void. (*Claggett* v. *Salmon,* 5 *Gill & John. Rep.* 314.) This plea, however, traverses all the allegations in the bill as to the assent of the surety to the agreement, and as to the fraudulent professions and representations on the part of the principal debtor that he was authorized to act for him. In the present stage of the suit, therefore, I must presume the plea is true and that the surety is discharged.

But the objection is well taken that the answer covers some parts of the relief and discovery embraced by the plea and therefore overrules the same. (*Story's Eq. Pl.* 532, § 688.) Here the bill denies that the agreement of August 1839 had been performed by J. Strong, but says nothing about a part performance. And the answer admits it has not been fully performed. No discovery of a part perform-

ance was therefore called for by the bill, or necessary to be stated in support of the plea. And yet, the answer not only sets out a part performance of the agreement, but also the payment of money which was not required to be paid to the complainants by the agreement; and which money the appellant, by his answer, insists should be applied towards the payment of the judgment. This part of the answer, as well as that which sets up the fact that certain lands had been conveyed to the complainants after appraisal and in pursuance of the agreement, is clearly an answer to the relief prayed by the bill, to that extent. And it is inconsistent with the plea, in which the appellant declines to answer at all as to any part of the relief sought by the bill. The plea, therefore, must be overruled as such. But as it may, in connection with that part of the answer which sets up a part performance of the agreement, amount to a defence to the suit either wholly or in part, it should be permitted to stand for an answer; with liberty to the complainants to except, and thus to obtain a full and perfect answer to the whole bill.

The order of the vice chancellor must be modified accordingly, without costs to either party on this appeal. The complainants, however, are entitled to their costs upon the argument of the plea and of entering the order overruling the plea and allowing it to stand for an answer. And if they except to the answer, the defendant Maltby Strong must answer those exceptions within twenty days, or within such further time as the vice chancellor, by an ex parte order or otherwise, may allow for that purpose.

<div align="center">Order modified accordingly.</div>