#### IN THE

# SUPREME COURT

#### OF THE

### STATE OF MINNESOTA,

##### AT JULY TERM, 1859.

---

### CHARLES L. WILLIS, Plaintiff in Error, *vs.* JONAH N. DAVIS, Defendant in Error.

Davis, the holder of a note, sued F. & W. who were respectively first and second endorsers. W. in his answer, alleges that after the maturity of the note, F. assigned and delivered to one Yates, as assignee for his creditors, property of a value more than sufficient to pay all claims provided for and secured by said assignment, among which claims was the note in question. That Yates took possession, and that afterwards, with the full consent of Davis, the property was re-assigned and delivered to F. who had disposed of it, and that he, W., did not know of, or consent to such re-assignment. *Held*—That Davis held the security created by the assignment to Yates, as well for the benefit of W. the surety, as for his own benefit. That he was bound to see that the property was used for the purpose of paying the debt, so far as he could control it ; and that his voluntary consent to have the property re-assigned and diverted to other purposes, without the consent or knowledge of W., deprived him (W.) of the means of indemnity against his liability, and that such relinquishment was a complete discharge of the surety.

From the record in this action, it appears that the suit was brought by the Defendant in Error, against the Plaintiff in Error, and one James Y. Caldwell and J. L. Farwell, in the District Court of Ramsey County, on a promissory note made by said Caldwell, dated June 17th, 1857, payable to the order of said Farwell, sixty days from date, for the sum of $1,150, with interest at three per cent. per month, and if not paid at maturity the principal and interest then due, to draw interest at the rate of five per cent. per month until paid, and endorsed by the said Farwell and by the Plaintiff in Error. The complaint alleges that on the day of the date of said note, it was endorsed by said Farwell, the payee thereof, to the Plaintiff in Error, and also on the same day in was endorsed by the said

3

Plaintiff in Error and delivered to the said Defendant in Error, who thereby became the owner and holder thereof, and that at the maturity of said note it was duly presented to the maker and payment demanded, which was refused, whereupon it was duly protested and due notice given to the endorsers. The complaint demands judgment for the sum of $1,219, (being the principal and interest due on said note at maturity,) and interest on that sum at five per cent. per month, from the maturity of said note.

The said Caldwell and Farwell did not answer, and judgment was taken against them by default, but the Plaintiff in Error answered alleging that he was but an accommodation endorser upon said note, *of which fact the said Defendant in Error had full knowledge at the time he took said note,* and that the liability of the Plaintiff in Error was only secondary to that of the said Caldwell and Farwell on said note.

The answer further alleges that on the 2d of October, 1857, the said Farwell assigned, transferred and delivered a large amount of property, embracing all he had, to one W. L. Yates, in trust to secure and pay said note and other indebtedness of the said Farwell, and that the said Yates accepted said trust and received said property, and continued in the possession of the same until the 19th of July, 1858, and that the property so assigned, transferred and delivered, *was of a value more than sufficient to pay all the claims provided for and secured by said assignment.* That on said 19th of July, 1858, the said Yates, *at the written instance and request, and under the authority and with the assent of the Defendant in Error, and others, and without the consent or knowledge of the Plaintiff in Error, re-assigned, transferred and re-delivered to the said J. L. Farwell, all of said property or the proceeds thereof,* and that after said re-assignment, transfer and delivery of said property by said Yates to said Farwell, the said Farwell put said property out of his hands, by sale, assignment, or otherwise. The written instruments showing the transfer and re-transfer of said property, and the request of the Defendant in Error for its re-transfer, are set forth in full in said answer.

The Defendant in Error demurred to the answer, *First—*

Because it did not deny any of the material facts set forth in the complaint. *Second*—Because it does not appear from the answer that the Defendant in Error ever made any arrangement with the maker or any of the endorsers of said note to extend the time for the payment of the same, or that he ever made any arrangement respecting the same whatever. *Third* —Because the facts set up in the answer are wholly insufficient to discharge the Plaintiff in Error from his liability on said note. *Fourth*—Because said answer is otherwise insufficient.

The Court below sustained the demurrer, and gave judgment against the Plaintiff in Error and in favor of the Defendant in Error, whereupon the Plaintiff in Error sued out a Writ of Error to bring the case to this Court.

The following are the points and authorities relied upon for the Plaintiff in Error :

We insist there was error in the Court below.

*First.*—In sustaining the demurrer to the answer.

*Second.*—In allowing the Plaintiff interest or damages on the note at the rate of five per cent. per month after its maturity, when the note drew only three per cent. interest before maturity, and also in compounding the interest.

*Third.*—In allowing the costs of the judgment against Caldwell and Farwell to be taxed against the Plaintiff in Error, and in taxing costs of an attachment when the record shows no attachment in the case, and also in allowing and taxing as the Clerk's costs in said action a greater amount than is authorized by law.

1. Was the demurrer properly sustained by the Court below ? We think not. The facts, in brief, are, that Farwell, who is primarily liable on the note, turned out and assigned property to Yates, to be held by him in trust for the payment of this note, the property being more than sufficient to pay the said note and other debts for the payment of which it was assigned ; and that the Defendant in Error, knowing the relation of the Plaintiff in Error upon said note, and without the knowledge or consent of the Plaintiff in Error, relinquished his lien, hold and claim upon said property, by authorizing,

requesting and causing, with others, said trustee to surrender and re-convey said property back to said Farwell, or the assignors thereof. This, in law, we claim, operated to discharge the Plaintiff in Error from all liability to the Defendant in Error upon said note. Yates accepted and entered upon the discharge of the trust by taking possession of the property. The Defendant in Error then had a lien and claim upon the property, which he could enforce, for the payment of his debt. Yates could make no disposition of the property without his consent, so as to defeat his claim upon it. The Courts were open to him at any time, to compel the application of the property to the satisfaction of his debt and other claims provided for in the assignment, in case the trustee should neglect or refuse faithfully to discharge the trust. His debt was then fully provided for and secure, and to keep it so, he had only to hold on and refuse his assent to a surrender of the property by the trustee to the assignor. But instead of this he relinquished his hold upon the property and allowed it to pass back to the assignor, and be otherwise disposed of. In so doing he relinquished his claim against the Plaintiff in Error.

Mr. Wallace, in his admirable note upon the discharge of sureties, in *vol. 2, page* 321, *American Leading Cases,* correctly says: " *The general relations subsisting between the parties primarily and secondarily liable on negotiable instruments are the same, under the principles of the commercial and common law, with those which subsist between principals and sureties in equity.*" It has accordingly been held, and is well settled law, that when there has been negligence or misfeasance in the management of the securities held by the creditor, or within his control, or in the pursuit of his remedies against the parties primarily liable for its payment, it will be a discharge of those who are secondarily liable. *Lynn vs. The Huntington Bank,* 12 *Sergeant & Rawle,* 61; *Ramsey vs. The Westmoreland Bank,* 2 *Penn. R.* 203; *The Bank vs. Fordyce,* 9 *Barr.* 275.

The case of *Hayes vs. Ward,* 4 *John. Chan.* 123, is a leading case upon the subject of the discharge of a surety, by reason of the acts of the creditor, relative to securities turned out for the debt by the principal. In that case a mortgage was given

Willis *v.* Davis.

by the principal to the creditor to secure the debt, at its inception, but the mortgage was invalidated by usury, and it was held by the chancellor that, if the security was vitiated in its origin by wrongful and illegal conduct of the creditor in exacting usurious interest for the money advanced, the loss should more properly fall on him than on the surety.

In the case of *Baker vs. Briggs*, 8 *Pick.* 122, the Plaintiff had surrendered property to the principal, which the latter had placed in his hands as a security for the debt, and this was held to be a bar to any subsequent proceedings against the surety. Parker, C. J., in delivering the opinion of the Court says:— " It is a well settled principle of equity, that a creditor who has the personal contract of his debtor, with a surety, and has also, or takes afterwards, property from the principal as a pledge or security for his debt, is to hold the property fairly and impartially for the benefit of the surety, as well as himself ; and if he parts with it without the knowledge or against the will of the surety, he will lose his claim against the surety to the amount of the property so surrendered."

It has also been repeatedly held that, where a judgment is recovered and the property of the principal debtor levied upon and the creditor releases the levy, the surety is thereby discharged from liability to the extent of the property released. *Commonwealth vs. Miller*, 8 *Sergeant & Rawle*, 452 ; *Lichtenthaler vs. Thompson*, 13 *id.*, 157 ; *The Commonwealth vs. Haas*, 16 *id*, 252 ; *Pifher vs. Lodge, ibid*, 214–229 ; *Dixon vs. Ewing*, 3 *Ohio*, 280. To the same effect are the English decisions—*Mayhew vs. Crickett*, 2 *Swanton*, 193 ; *Harberton vs. Bennett*, 1 *Betty, Irish Chan.*, 386. In *Law vs. The East India Co.*, 4 *Vessey*, 824, the creditor acting under a mistaken impression as to the state of the accounts between himself and the principal, paid over a sum of money to the latter, and it was held to be a complete discharge of the surety to the extent of the money paid. In *American Leading Cases page* 260, the author in discussing this subject says : " The general course of decision is to this effect, and appears to establish that the surety will be discharged in all cases in which the creditor relinquishes a hold which he has obtained on the property of

the principal, without making it effectual for the payment of the debt,"—citing *Carpenter vs. Devon*, 6 *Alabama*, 718; *Smeed vs. White*, 3 *J. J. Marsh*, 525; *Givens vs. Briscoe, ibid*, 534; *Jones vs. Bullock*, 3 *Bibb*, 467; *Farmers' Bank of Ohio vs. Reynolds*, 13 *Ohio*, 84; *Baker vs. Fordyce*, 9 *Barr.*, 275; *Talmage vs. Burlingame, ibid*, 21; *Ferguson vs. Turner*, 7 *Missouri*, 497; *Curan vs. Colbert*, 3 *Georgia*, 239; *Brown vs. Riggins*, 3 *ibid*, 405; *See also, Hayes vs. Ward*, 4 *J. Ch. R.* 130.

The authorities are uniform in England and America, that if a creditor relinquishes his hold upon property of the principal, or person primarily liable for the debt, without the consent of the surety or person secondarily liable, it will in all cases operate to discharge the latter to the extent of the value of the property released. In addition to the authorities already cited, it has been held in the case of *Neff's Appeal*, 9 *Watts & Serg.* 36, that " A creditor who releases any security which he holds for the payment of his debt, thereby releases a surety, *pro tanto ;*" also in the case of *Payne vs. The Commercial Bank of Natchez*, 6 *Smedes & Marsh*, 24, that " A creditor who takes collateral security for his debt, is bound to hold it impartially and justly, and if it be lost by his negligence, or improper conduct, the surety on such debt may bar the creditor of so much of his demand as he might have received from such collateral ;" also in *Ferguson vs. Turner*, 7 *Mis.*, 497, that, " The voluntary surrender by a creditor of a specific lien upon property of the principal, is a discharge of the surety ;" and in *Smith vs. McLeod*, 3 *Ired. Ch.* 390; *Nelson vs. Williams*, 2 *Dev. & Bat., Ch.* 118; *Griswold vs. Jackson*, 2 *Eden, Ch.* 461; *and Cullum vs. Emanuel*, 1 *Ala. N. S.*, 23, that " Where a creditor relinquishes any security for the debt upon the property of the debtor, a surety for the debt is discharged, *pro tanto.*"

" A judgment having been recovered against the debtor and his surety, property of the debtor, to the amount of the debt, was seized on execution, and afterwards relinquished, without the consent of the surety, upon payment of a small sum by the debtor, *held* that the surety was thereby discharged, and that having been compelled at law to satisfy the judgment, he

might recover it back in a Court of Equity, with costs." *Cooper vs. Wilcox*, 2 *Dev. & Bat. Ch.* 90 ; *Alexander vs. The Bank of the Commonwealth*, 7 *J. J. Marsh*, 580 ; *Davis vs. Mikell*, 1 *Freem. Ch.* 548, *and see cases before cited of Jones vs. Bullock*, 3 *Bibb*, 467 ; *Dixon vs. Ewing*, 3 *Ohio*, 280.

It is a familiar principle of equity that where a surety pays the debt of the principal, he is entitled to be subrogated to all the rights of the creditor, and entitled to the benefit of all securities held by the creditor, and if the creditor surrenders up any securities, it is directly prejudicial to the surety, and will discharge him from liability. *See Bangs vs. Strong, and cases there cited, in note* 10, *Paige* 11. In the last case the creditors had bound themselves to take land from the principal debtor in payment of the debt or a part of it, and on appeal in 7 *Hill*, 252, Bronson J., says : " The creditors had agreed to take land instead of money, for the whole or a part of the debt. Until there was some breach of the agreement on the part of J. Strong (the principal) the creditors had no right to demand money from either principal or surety. If the surety had paid the debt and been substituted in place of the creditors, he would only have acquired the right to receive payment in land. When the rights and obligations of parties are thus changed without the consent of the surety, it cannot admit of a doubt that he will be discharged. In contemplation of law it is an injury to the surety, although the Court may not be able to see that he has suffered any damage."

Applying the law, to the case at bar, as laid down in the cases referred to, and others to the same effect too numerous to cite, and we are unable to see how the Plaintiff in error can be held liable on this note, under the facts set up in the answer. The transfer of the property to a trustee to secure the debt, gave the creditor the same claim to it as if it had been transferred direct to himself. The answer alleges the property to have been sufficient to pay all the debts provided for in the deed of trust. This being the case, the Plaintiff might well rest at ease, without taking any steps to secure himself against liability on the note. But whether the Plaintiff in Error was prevented from securing himself, by reason of the securities

turned out by his principal for the benefit of the creditor, or whether he had any knowledge that the principal had thus made provision for the payment of the debt, is wholly immaterial. For if the creditor had securities in his hands or within his control, and he released his hold upon them, or neglected to make them available, the surety is thereby discharged, according to the whole current of authorities, and the law, as laid down by all the commentators treating upon the subject.

The other points made, we purpose to submit without discussion. In rendering judgment against the Plaintiff in Error, interest was computed on the note from its date to maturity, at three per cent. per month, the rate agreed upon, and on the principal and interest then due, thereafter at the rate of five per cent. per month. This was erroneous, under the decision of this Court at the last term in the cases of *Mason & Craig vs. Callender, Flint & Co.*, and *Bailey vs. Weller.*

In taxing the costs for the judgment against the Plaintiff in Error, it was error to include the costs of the judgment against the principals, Caldwell and Farwell. We are unable to find any authority for taxing the Clerk's fees at the amount included in the judgment, and would like the decision of this Court, settling this matter of costs, though trifling in this instance in amount, but of daily complaint.

The following are the points and authorities relied upon for the Defendant in Error:

*First.*—Nothing will discharge a subsequent endorser or surety except the *giving of time* to one primarily liable or some agreement, with such one, which materially varies the contract and obligation of such subsequent endorser to his injury. *King vs. Baldwin, American Leading Cases*, 100, fully discusses. matters under " discharge of surety." *Byles on Bills, Sec.* 193, *et. seg.* title, " *Principal and Surety ;*" *Edwards on Bills and Notes*, 291 ; *Bayley on Bills, page* 357.

*Second.* The Defendant in Error gave no time to any prior party, nor made any agreement with him to the prejudice of Plaintiff in Error. See answer in case, from which it appears : That the only act Defendant committed, was to consent that a

commercial assignment which had continued nine months with no payments of importance to creditors, should be lifted, and the property go back into the prior endorser's hands, subject to any claim which, Willis paying the note, might have against him for contribution.

*Third.*—The assignment made part of the answer, shows on its face, that Farwell & Co. could *not* pay their debts *in full*; and the same instrument recited in the answer, puts the Davis note in the *last class to be paid. See assignment as recited in the answer.*

*Fourth.*—We say then, that Davis' consenting to the lifting the assignment of J. L. Farwell & Co., and to J. L. Farwell & Co. resuming their property and business, was an act beneficial to Plaintiff in Error, and not prejudicial, and this appearing in the face of the answer, the demurrer was properly sustained.

*Fifth.*—If there has been an over assessment of damages in the nature of interest, it cannot be inquired into by this Court on Writ of Error, no objection having been taken below, and this Court having no means of knowing the rule of damages in the Court below.

*Sixth.*—If the Clerk erred in taxing costs, the remedy is first by application to lower Court.

SMITH & GILMAN, Counsel for Plaintiff in Error.

SANBORN, FRENCH & LUND, Counsel for Defendant in Error.

*By the Court*—FLANDRAU, J. James Y. Caldwell made his promissory note for the sum of $1,150 payable to the order of J. L. Farwell. Farwell endorsed the same as first endorser, and the Plaintiff in Error as second endorser. It was not paid and was duly protested; suit was commenced upon the note by Jonah N. Davis, the Defendant in Error, who was the owner of the note. Caldwell and Farwell suffered default, and the Defendant Willis answered that he was but an accommodation endorser, and only secondarily liable upon the note to the other parties. That after the maturity of the note, Farwell had assigned and delivered to one Yates, as a trustee to said

Farwell's creditors, property " of a value more than sufficient to pay all the claims, provided for and secured by said assignment," among which claims it is alleged was the note in question. That Yates accepted and entered upon the trust, and took possession of the property. That the property was afterwards, with the full consent of the Defendant in Error, Davis, re-assigned and given up to Farwell. That Willis did not know of, nor consent to the re-assignment, and that Farwell had disposed of the property; and claimed judgment.

The Plaintiff demurred to the answer, and the demurrer was sustained.

Willis stands on the note in the relation of surety to all parties who precede him, and his liability is secondary only to theirs. The relation of principal and surety is one involving the utmost good faith and confidence, and it is the duty of the principal and the creditor, to carefully consider and protect the rights of the surety in all their transactions relating to the debt; for any act which varies the rights or liability of the surety to his prejudice, will operate to discharge him altogether or to the extent of the change made in his original contract, as the circumstances may be.

A surety may at any time pay the debt to the creditor, and sue his principal at once to reimburse himself. Therefore, if the creditor has made any arrangement by which the time of payment has been extended to the principal debtor, he deprives the surety of his right to sue at once in payment of the debt, which is a material change in the contract of the surety and in the remedy which he possessed at the time he entered into it, and will operate to discharge him altogether. 1 *Story Equity Jur.*, *Sec.* 326; *Boultbee vs. Stubbs*, 18 *Ves.*, 20; *Ludlow vs. Simond*, 2 *Cain Cas. Err* 1; *King vs. Baldwin*, 2 *John. Ch.*, 554; 17 *John.* 384, *Hubby vs. Brown*, 16 *John.*, 70; *Wood vs. Jefferson Co. Bank*, 9 *Cow.*, 194; *Myers vs. Welles*, 5 *Hill*, 463; *Bank of Orleans vs. Barry*, 1 *Denio*, 116.

In discussing the question of the good faith necessary to be observed in the dealings between the creditor and the principal debtor as regards the rights of the surety, *Mr. Story in his work on Equity Jurisprudence, at Sec.* 326, *of Vol.* 1, *says:*

" It is upon this ground that if a creditor without any communication with the surety and assent on his part, should afterwards enter into any new contract, or should stipulate in a binding manner upon a sufficient consideration, for further delay and postponement of the day of payment· of the debt, that will operate in equity as a discharge of the surety."

Again in *Adams' Equity*, *at page* 107, in speaking of the discharge of sureties, he says : " The same effect is produced if the creditor enters into a binding contract to give time for payment to the principal, for it would be a fraud on the contract if he were afterwards to receive his debt from the surety, and thus confer upon him an immediate right of action against the principal. The position of the surety is therefore waived and he is in consequence discharged altogether from his guarantee."

*In* 1 *Maddock's Chancery*, *at page* 235, the same doctrine is laid down, and it is said to be " because he in fact cannot have the same remedy against the principal as he would have had under the original contract."

A surety has always the right to pay the debt of the principal, and when he does so, he becomes entitled to be subrogated to all the rights of the creditor, and to receive the benefit of any security which the creditor may hold against the principal debtor. He in fact takes the place of the creditor to all intents and purposes. *See Bangs vs. Strong*, 10 *Paige*, 11, *on appeal ;* 7 *Hill*, 252, *Ghan vs. Neimcewicz*, 3 *Paige*, 614; *same affirmed*, 11 *Wend.* 312; *Rathbone vs. Warner*, 10 *John.* 597.

" Immediately on making such payment, he may bring assumpsit at law against the principal for indemnity, and he may also sue the creditor in equity for an assignment of any mortgage or collateral security for the debt, so that he may as far as possible be substituted in his place." *Adams' Equity*, 269.

" A surety is entitled to every remedy which the creditor has against the principal debtor ; to enforce every security, and all means of payment ; to stand in the place of the creditor, not only through the medium of the contract, but even by means of securities entered into without the knowledge of the surety, having a right to have these securities transferred to

him though there was no stipulation for it, and to avail himself of all these securities against the debtor." *Maddock's Chancery, Vol.* 1, 235. The same principle may be found in *Story's Equity Jurisprudence, Vol.* 1, *Sec.* 327.

If a creditor takes a security from the principal debtor sufficient to satisfy the debt, he does not hold it solely for his own benefit, but also for the benefit of the surety, who has just as much interest in the debt being paid as he has. If the security is converted and the debt paid, the security is relieved from all further liability ; but if the surety is lost or relinquished, the surety is as much a sufferer as the creditor. It therefore behooves the creditor to see to it, that the utmost good faith is maintained between himself and the surety in the manner in which he deals with the securities he holds, and "if he parts with it, without communication with the surety, or by his gross negligence it is lost, that will operate, at least to the value of the security, to discharge the surety." 1 *Story Eq. Jur., Sec.* 326, *Law vs. East India Co.*, 4 *Ves.* 833.

The answer shows that after the debt fell due, Farwell, who was primarily liable on the note, assigned to one Yates, property of a value more than sufficient to pay the note, which assignment was made for the benefit of Davis, the holder, among others, and that Yates accepted the assignment, and entered upon the discharge of his trust.

The effect of this was to furnish the creditor with the means of paying the note and relieve the surety from any further liability, and Davis was in duty bound to see that the property was used for that purpose. Willis could at any time have paid the note to Davis, and been subrogated to all the rights which he possessed over this property, and directed its application to the payment of the debt, as it would then have stood between himself, and the maker and first endorser. Instead of availing himself of the property, he relinquished his hold upon it without consulting the surety, and allowed it to pass back into the hands of Farwell, who disposed of it in some other way than the payment of the note. It would be against all conscience to allow Davis by whose act Willis has been deprived of the means of indemnity against his liability, to recover of him.

The relinquishment of the property, was, under the principles laid down above, a complete discharge of Willis as surety.

The Judge erred in sustaining the demurrer to the Defendant Willis' answer, and the judgment is reversed. The Plaintiff, however, should have an opportunity of litigating the facts, and is permitted to reply as stated in the order made at the announcement of the decision at term.