## DEMAREST *a.* DAIG.

*New York Common Pleas ; General Term, July,* 1860.

### Res Adjudicata.

The decision of a referee on a question within the power of the court to direct to be determined by a reference, and which might be reviewed by appeal,—*e. g.,* on a question of the settlement of the accounts of a receiver,—is a determination, which, when made an order of the court, is conclusive on the parties as *res adjudicata.*

Appeal from a judgment.

The facts are fully stated in the opinion.

By the Court.—Hilton, J.—John Daig, the husband of the defendant, died intestate, in October, 1846, and in the same year the defendant was appointed by the surrogate of the county of New York, administratrix of his goods, chattels, and effects. Among the property to be administered, was a household estate, which in January, 1847, she sold to Ira Burge, receiving from him in part payment, his note for $2,500. In March following, and before the note was paid, an action was brought in the Supreme Court, by John P. Demarest and wife, against the defendant and others, for the purpose of establishing an alleged will of John Daig, and in this suit an injunction was granted, restraining the defendant from intermeddling as administratrix or otherwise, with the estate or effects. Pending the suit, Thomas J. Coleman was appointed receiver of the rents and profits of the property of the deceased, and in addition was, in December, 1851, appointed special receiver of the Burge note then held by the defendant, but which on his appointment, was by her delivered over to him, and he afterwards was paid the amount of it, which, with interest, was on February 25, 1852, $2,808.13. In June following, the Supreme Court decreed, upon a hearing, a dismissal of the complaint in the

action thus commenced, and dissolved the injunction as granted; whereupon the defendant was reappointed by the surrogate, administratrix of the estate, &c., of John Daig, and entitled as such to the proceeds of the Burge note. In March, 1853, the defendant and Coleman had a settlement respecting their proceeds, by which the defendant received three coal-bonds for $2,500 of the Chartrer's Coal Company, in which, it was claimed by Coleman, the money had been invested; and a check for a difference or balance of about $153. At this time, the defendant gave the receipt and guaranty, upon which suit is now brought, and by which she acknowledged receiving the bonds and difference mentioned, in full settlement of her claim against Coleman as special receiver in respect to the Burge note, and discharged him from all liability therefor; and further, she assumed the responsibility of accounting to all persons interested in the estate of John Daig, deceased, and agreed to save Coleman and his heirs harmless therefrom—the instrument concluding with the assertion that as administratrix, she, the defendant, had full power to make such settlement.

In May, 1854, several of the parties to the suit thus dismissed, upon a petition and notice of presentation thereof, duly served on Coleman, applied to the court for an order requiring him to render an account of his proceedings as trustee and receiver of the rents and profits, and also as special receiver of the proceeds of the Burge note; and upon the amount in his hands being ascertained, that he pay it over to be distributed by the court among those entitled to it. It seems that there was no opposition to this application, and accordingly an order of reference was made on May 12, 1854, by the court to Dayton Hobart, Esq., to take and possess the accounts of Coleman, and upon a settlement thereof, and the accounts in his hands being ascertained, directing that he pay it into the hands of the referee, to be distributed among the parties entitled to it. And furthermore, it was provided that upon such reference, Coleman or any of the parties to this suit were at liberty to summon before the referee all persons interested in the accounts, so that the same might be *finally settled.*

Before, as it seems, any proceedings were had under this order, and while the defendant, Mrs. Daig, was ignorant of its

having been granted, she caused an application to be made to the court for an order requiring Coleman to account respecting the Burge note. The petition upon which this application was based, and which was, with notice of the intended motion to the court, presented and duly served on Coleman, stated that as administratrix of John Daig, deceased, she had rendered to the surrogate a full account of her proceedings, and been fully discharged, except as to the proceeds of the Burge note, and as to which Coleman had in no way accounted, except for a small sum, which was, as before stated, promised her in cash— and as to the three coal-bonds delivered to her in settlement, that they were imposed upon her by fraud and misrepresentation on the part of Coleman, were of no value, and that instead of the moneys having been by him invested in them, at or about the time of its receipt, as he had represented to her, that the money, as she believed, had been used by him in his business, and the bonds had been procured afterwards for a nominal sum, and were worthless.

On the hearing of this application Coleman appeared, denied under oath all the fraud and deception charged against him, and alleged that the investment in the coal-bonds had been made in good faith, and at Mrs. Daig's request. That as such receiver he had settled with her as administratrix,—taken from her an indemnity against further accounting, and therefore was fully discharged from the trust respecting the Burge note. He concluded his answer to the petition by asking for its dismissal, with costs. After hearing the parties, the court referred it to Theodore Sedgwick, referee, to take testimony upon all the issues involved in the petition and the accompanying papers, and report the same to the court, reserving all questions until the coming in of the cause, when the matter might be brought up by motion of either party.

Subsequently, the defendant having been notified of the reference to Hobart, appeared therein. During its progress Coleman insisted that he should only be called upon to vouch for the moneys received by him from the real estate of John Daig, deceased, excluding the Burge note; but the referee decided otherwise, and held that under the order of reference he was required to report the accounts in respect to each, both as to the note and real estate. Shortly after this decision, Coleman

applied to the court to have the accounts in respect to the
Burge note continued under the order of Referee Sedgwick,
and withdrawn from the consideration of Mr. Hobart, under
the order of reference to him.    The court, after hearing counsel
for all the parties interested, denied this application, and directed
that the reference to Mr. Sedgwick, and the order and proceed-
ings thereon be revoked and discharged, and Mr. Hobart was
directed to fully execute the order of May 12, 1854, and Cole-
man was directed to account for the proceeds of the Burge note,
and all other matters as in the order provided.    The effect of
this direction was to engraft upon the reference to Hobart the
issue presented by the petition of Mrs. Daig, and the answer
of Coleman to it, which had been originally referred to Mr.
Sedgwick to take process in respect to.

When the parties next appeared before Mr. Hobart, upon
the reference thus consolidated, counsel for Mrs. Daig tendered
to Coleman the three coal-bonds, and thereafter testimony was
given respecting their value and character, and as to the trans-
actions referred to in the petition of Mrs. Daig and Coleman's
answer to it.

At the close of the reference, the referee determined in favor
of the claim of Mrs. Daig, by finding that Coleman had been
shown to have received the proceeds of the Burge note, but
had not shown any legal or valid payment thereof, and there-
upon, the referee proceeded to and did determine the rights and
interests of all parties to the moneys ascertained by him to be
remaining in Coleman's hands.

Notice of the motion for confirmation of this report having
been given to Coleman, his counsel attended and opposed, upon
the ground that the referee erred in charging Coleman with the
Burge note, the same being personal property, and having been
paid over to the administratrix; also, that he erred in exclud-
ing testimony offered upon the reference to show that Coleman
had been discharged from the payment of the proceeds of the
note of Burge; and, finally, that it was clearly proved that
Coleman had paid the administratrix the moneys collected on
the note, while, if the report was adopted, she would be en-
titled to receive one-half of the money over again.    The court,
on June 30, 1860, confirmed this report and decision, after
allowing a credit of about $300 in addition to those allowed by

the referee, and, therefore, an order was made directing the payment and distribution of the proceeds of the Burge note, then amounting to $3,015.07, among the parties appearing entitled to it. Subsequently, Coleman failing to make the payment as directed by the last-mentioned order, the court awarded an attachment as for a contempt against him, unless he paid as directed forthwith; and in respect to the distributive share of such moneys belonging to Mrs. Daig, he was directed to pay it into the United States Trust Company, to abide the result of any action in respect to it, which might be commenced within thirty days thereafter, without, however, by such direction, intending to adjudicate upon the rights of Coleman and Mrs. Daig in any respect.

That action thus foreshadowed has been brought by the present plaintiff upon the receipt and guaranty of Mrs. Daig, so given by her at the time of the alleged settlement between Coleman and her on March 10, 1856 ; the plaintiff as assignee having surrendered to any rights of Coleman upon the instrument which forms the subject of this suit. The defence here is substantially a reiteration of the fraud and deception alleged in the petition of Mrs. Daig before referred to, and a general statement of the proceedings here narrated, claiming that by these the rights of Coleman and herself respecting such receipt and guaranty, and the proceeds of the Burge note had been therein finally adjudicated and determined.

At the trial of this case these facts substantially appeared from the records, original orders, and proceedings produced from the files of the Supreme Court, and by which it was claimed that the defence of *res adjudicata* was established. The judge so held, and the plaintiff having appealed, that may be regarded as the only material question submitted for our reverse and decision, although it was urged on the argument that some of the evidence admitted, notwithstanding the plaintiff's objection and subsequent exception, was incompetent and should have been rejected ; such as the minutes of Mr. Hobart, the referee, of the proceedings and evidence before him, also copies of points used on the arguments had before the Supreme Court. There can be no doubt that these papers were improperly allowed in evidence, and if the facts stated were in any respect, so far as they are material upon the question before us, gathered from

them, we would feel called upon to reverse the judgment as being grounded upon incompetent testimony. (1 *Phillips on Ev.*, 4th Am. ed., 400, *and note;* 1 *Greenl. Ev.*, 166.) But as the motion-papers, orders, reports, and documents referred to forming the judicial proceedings in the Supreme Court respecting the subject of the present controversy, and properly allowed to be read at the trial (Van Rensselaer *a.* Akim, 22 *Wend.*, 549 ; 1 *Greenl. Ev.*, 86), furnish proof of all the material facts in the case, the papers thus improperly admitted may be considered by us as cumulative in some degree, and therefore should be regarded as immaterial matter, in no way affecting the result arrived at by the judge at the trial. (Benjamin *a.* Smith, 12 *Wend.*, 404 ; Smith *a.* Kerr, 1 *Barb.*, 155.)

A brief review of the proceedings which were instituted to call Coleman to account for the moneys which had come to his hands as special receiver, may be useful to illustrate the conclusion to which these facts necessarily lead us.

There can exist no doubt as to the power of a court of equity, of its own motion and at any time, to call upon a receiver appointed by it for an account of the money or property which has come to his hands, and to direct its distribution among the parties appearing entitled to it. The usual course, however, is for the court to await the action of those interested; and so it was in this instance. The suit in which Coleman was appointed having terminated, some of the parties to it, in conformity with the settled practice in such cases, applied to the court for the usual reference to pass and audit the receiver's accounts. The order upon this application having been made without the knowledge of Mrs. Daig, who as administratrix was the only person entitled to receive the proceeds of the Burge note, owing to the fact that it was part of her husband's estate, which came to her for distribution in due course of administration (2 *Rev. Stat.*, 82, § 6 ; *Ib.*, 113, § 3), she subsequently presented her petition to the court, setting forth the pretended settlement of Coleman, and upon which he procured the receipt and guaranty which forms the basis of the present action. She alleged that it was procured from her by fraud and misrepresentation, and should not, therefore, be regarded as a bar to his being required by the court to account for and pay over to her, as administratrix, the moneys which had come to his hands as re-

ceiver. To this petition he answered by an affidavit denying the fraud charged, and claiming that he had paid over to her all the money he had received, and asked that he be discharged from any accounting in the matter. Thus an issue of fact was presented to the court for adjudication in the only way that the official position of Coleman would permit such an issue to be raised; and there can be no doubt that it was perfectly competent for the court, at the time of the hearing upon this petition, to determine the question there presented, and to declare whether the receipt and guaranty was entitled to the weight which Coleman claimed for it, or whether by reason of the alleged fraud and misrepresentation it was to be considered as absolutely void and of no, obligatory force; and in case the latter view had then been adopted, and the court had ordered Coleman to pay the proceeds of the Burge note to Mrs. Daig, as administratrix, I think the learned counsel for the plaintiff here would not for a moment contend that such a decision would not be a final adjudication upon the question.

It certainly would make no difference whether the judgment or determination was in a common-law action, or in a proceeding which by the ordinary practice of courts of equity is of a summary character; but, as was said by Edmonds, J., in White *a.* Coatsworth (2 *Seld.*, 143): "It is enough that the question has been submitted to a judicial officer to be determined in a judicial way, that the parties and their proofs have been heard, and their rights settled by a judicial determination. When this has been done it is conclusive upon the parties until reversed, vacated, or set aside in the forms prescribed by law." And it seems that this rule has been carried so far, that it has been applied to the taxation of costs, which though not technically a judgment, yet is a judicial act—a duty confided to judicial officers, to be exercised in a judicial manner, and by which parties to the proceeding are concluded. (Supervisors of Onondaga *a.* Briggs, 2 *Den.*, 33.)

But it can be said that the court did not so determine on the hearing of the petition; yet the course adopted amounted to the same thing in effect. Instead of determining the question on the spot upon the proofs which the parties then offered, the usual reference was ordered to take testimony, and this direction was subsequently engrafted upon the original reference

granted in the first instance. The referee was thus substituted for the judge, and his decision was equally binding; and even if it were not, the action of the court afterwards upon exceptions by Coleman to his report when this identical question first raised by the petition was again presented, and the court affirmed his judgment, thus in effect declared that the receipt and guaranty now sued on was procured by fraud, as Mrs. Daig had in her petition alleged. The order then entered, having, as we have seen, been made in a summary application in an action after judgment, was subject to appeal as a matter of right (Kirby *a.* Fitzpatrick, 18 *N. Y.*, 484), and might, as a final determination affecting a substantial right, have been brought ultimately for review before the Court of Appeals. (*Code*, § 349, subd. 5; § 11, subd. 3.) It therefore comes within the class of adjudications to which the doctrine of *res adjudicata* is applicable, and Coleman by not appealing and procuring its reversal is concluded by it. To hold otherwise would in our opinion be disregarding a salutary rule of law by which parties are prevented from litigating over again, at the pleasure of either, matters which have been once solemnly determined by a judicial tribunal. (Outram *a.* Morewood, 3 *East*, 346; Gardner *a.* Buckbee, 3 *Cow.*, 120; Butt *a.* Sternburgh, 4 *Ib.*, 559; Wood *a.* Jackson, 8 *Wend.*, 9; Miller *a.* Manier, 6 *Hill*, 121; Bouchaud *a.* Dias, 3 *Den.*, 238; Bangs *a.* Strong, 10 *Paige*, 11; Doty *a.* Brown, 4 *Comst.*, 71; Birckhead *a.* Brown, 5 *Sandf.*, 134; Davis *a.* Talcott, 2 *Kern.*, 184; Castle *a.* Noyes, 4 *Ib.*, 329.)

Judgment affirmed.