ROBERT E. LOVE *vs.* ANDREW ALLISON, Administrator of
JAMES OVERTON, deceased.

## October Term, 1874.

ACCOMMODATION ENDORSER MAY BE RELEASED BY ABANDONMENT OF LEVY ON
REALTY OF A PRIOR ENDORSER.—Defendant's intestate recovered a judgment
against the makers and endorsers on a note endorsed for the accommodation
of the makers, who became insolvent; the judgment was enjoined by the
first endorser by bill, which was dismissed, and defendant's intestate took
judgment on the injunction bond, issued execution, had it levied on realty
of the first endorser, and then abandoned the levy. *Held,* that these facts
constituted no defence to a *scire facias* to revive the original judgment against
the second endorser, but would entitle the latter to relief in equity.

ENDORSER—EFFECT OF INJUNCTION BY A PRIOR ENDORSER.—It is no defence to
a *scire facias* to revive a judgment at law against the second endorser of a
note, that the first endorser had enjoined the execution of the judgment by
bill, afterwards dismissed, and that the judgment creditor recovered judgment
on the injunction bond, nor would these facts alone entitle the prior endorser
to any relief in equity.

INJUNCTION—DISSOLUTION FOR WANT OF EQUITY.—An injunction will not be
dissolved for want of equity on the face of the bill when the bill discloses a
case proper for equitable relief, though defectively stated.

*R. H. Hubbard,* for complainant.
*Matt W. Allen,* for defendant.

THE CHANCELLOR :—Motion to dissolve an injunction for
want of equity on the face of the bill.

The facts disclosed by the bill are these : The complain-
ant was the second endorser, and Joel A. Battle the first
endorser, both for the accommodation of the makers, on a
note dated the 6th of November, 1858, at twelve months,
for $1,050. The note was sold by the makers to the
defendant's intestate at a usurious rate of discount, the
latter purchasing with knowledge that the complainant was
an accommodation endorser, and that the note was made
and endorsed to sell to raise money for the makers. On the
3d of September, 1860, the complainant's intestate recovered
judgment on this note, against one of the makers and both
of the endorsers, in the circuit court of this county. In the
meantime the makers had become insolvent, and left the

state. Complainant, fearing that he might be compelled to pay the judgment, caused execution to issue on the 20th of October, 1860; whereupon the said Joel A. Battle, on the 9th of November, 1860, without consulting complainant, or requiring him to join in the suit, filed his bill in this court against Overton, charging that the debt and judgment were usurious, and obtained an injunction against the execution of the judgment, upon giving bond in double its amount, conditioned for the payment of the debt if the suit was not successfully prosecuted. The sureties on this bond were W. E. Huggins and James Thompson. On the 10th of May, 1861, a decree was rendered in that cause, reducing the judgment by $45 of usury, and giving judgment against Battle, Huggins, and Thompson, on the injunction bond, for the balance, with interest.

On the 21st of March, 1865, execution was issued, on this last judgment, to the sheriff, and was by him levied upon certain real estate as the property of Battle, and the land was advertised to be sold on the 29th of April, 1865, under the levy. But on that day the execution was returned by the sheriff, endorsed thus: " Came to hand the same day issued, and received from J. Thompson, on the within execution, $754.76, and ordered to be held up as to the balance, by plaintiff's attorney, and retained in my hands $25, costs and commissions on the amount paid. April 29th, 1865."

On the 21st of June, 1867, another execution issued, and was levied by the sheriff on a tract of land of 360 acres, described as the property of Huggins, and returned too late to sell. On the 4th of January, 1869, a *venditioni exponas* issued to sell this land, which was returned, " not sold for want of bidders."

On the 29th of June, 1870, another execution was issued against all the parties, and was levied on the 29th of September, 1870, upon a tract of land of seventy acres, described as the property of Thompson, levied too late to sell.

The bill charges that each of these tracts of land, so levied on, was worth more than the original judgment, with

interest and costs ; that the levies were abandoned after the plaintiff in the execution had acquired a specific lien on the land, and that the lien has been lost.

The bill further charges that complainant has been recently informed that James Thompson's administrator insists that his intestate paid the sum of $729 on the execution of the 21st of March, 1865, and that Overton then, in consideration of such payment, agreed to discharge him, Thompson, from further liability.

During all this time no steps had been taken to enforce the judgment at law of the 3d of September, 1860. Afterwards, and after the death of Overton, the defendant, on the — day of ———, 1874, sued out a *scire facias* to revive the judgment, and it was revived in his name, as administrator, and it is an execution issued against the complainant on this revived judgment which has been enjoined by the present bill.

The bill bases the complainant's title to relief on the following grounds :

1st. That the filing of the bill by Battle enjoining the original judgment, the giving of the injunction bond with security, and the recovery of judgment thereon by the defendant's intestate operated a release of the complainant ; and, at any rate, that he cannot be made liable so long as the sureties on the injunction bond are solvent.

2d. That the agreement made by defendant's intestate with Thompson operated as a release of complainant.

3d. That the abandonment of the levies on land as aforesaid operated a release.

The defendant insists that these defences, if good, should have been made to the *scire facias*, and are cut off by the judgment. He also contends that the facts stated did not release the complainant, and that there is, consequently, no equity on the face of the bill.

It has been held by our supreme court that the suing out of an injunction by the principal debtor, and a subsequent recovery of the creditor on the injunction bond, are

8

no defence to a *scire facias* to revive a judgment against sureties. *Whitesides* v. *Hickman*, 2 Yerg. 358. Whether it would be any defence in equity may well be doubted. The argument is that the injunction bond is in lieu of the payment of money into court, under the English practice, and, when received, is a satisfaction. But money thus paid into court is only a security, not a payment. *Broughton* v. *Pitchford*, 6 Madd. 295. And our supreme court seems to have held, at Jackson, at its April term, 1873, that the taking of judgment on an injunction bond, and collecting a part of it, will not prejudice the creditor's right to proceed against a surety defendant, on the original judgment. *Gowan* v. *Graves*, cited in 2 Southern Law Rev. 719. The judgment on the bond is only a new and additional security for the debt, and, upon principle, cannot affect the creditor's rights on prior securities. Hopk. 505 ; 9 Rich. Eq. 184.

The equity of the bill which is rested upon the discharge of Thompson, in consideration of the payment by him of a part of the debt, was clearly no defence at law. Previous to the Code it would have been no defence in equity, for the part payment of a just debt was no consideration, and the release, consequently, not binding. If the discharge be in writing, it will operate according to the intention of the parties, under our statute, though for the composition of a debt, and without any new consideration. Code, §§ 3789, 3790. The defect in this bill is in failing to show that the discharge was in writing.

The third ground of relief, based upon the abandonment of the levies on realty, merits more attention. In a case where the bill was filed by the stayor of a justice's judgment against the creditor, I held that the abandonment by the latter of the levy of an execution on realty of the principal sufficient to satisfy the debt did release the stayor. *Watson* v. *Read*, 1 Tenn. Ch. 196. That decision was affirmed by the supreme court, on appeal, and, to the same effect, is *Nelson* v. *Williams*, 2 Dev. & B. Eq. 113. See, also, *Gillespie* v. *Davidson*, 6 Heisk. 27. The fact that the suretyship does

not appear on the face of the judgment, while it precludes defence at law, will not prevent relief in equity, notwithstanding the provisions of the act of 1843, ch. 32 (Code, §§ 3028–3031), which have been held to be merely directory. *Finley* v. *King*, 1 Head, 123; *Chaffin* v. *Campbell*, 4 Sneed, 192; *Beeler* v. *Hall*, 11 Humph. 445; *Anderson* v. *Talbot*, 1 Heisk. 407. Before the act of 1843 it had been determined that a surety might, after judgment at law, come into equity for relief, upon a ground growing out of the relation of principal and surety. *Hancock* v. *Bryant*, 2 Yerg. 476; *Thompson* v. *Watson*, 10 Yerg. 362. And both before and since that act it has been held that the fact that the relationship could not be shown at law was itself a substantive ground of equity jurisdiction. *Deberry* v. *Adams*, 9 Yerg. 52; *Dozier* v. *Lea*, 7 Humph. 520; *Coles* v. *Anderson*, 8 Humph. 489. This is, indeed, a general principle of equity law. *Rees* v. *Berrington*, 2 Ves. 541; *Hollier* v. *Eyre*, 9 Cl. & Fin. 11; *Spriggs* v. *Bank of Mount Pleasant*, 10 Pet. 237; *Bangs* v. *Strong*, 10 Paige, 11.

In this case the complainant was the accommodation endorser of the makers of the note sold to defendant's intestate. He was not the accommodation endorser of Battle, and, therefore, he had no summary remedy against him. His claim to relief grows out of the fact that Battle was liable to him as prior endorser, and that the defendant's intestate, with knowledge of the relation, voluntarily relinquished a lien on specific property of Battle, acquired by the levy of his execution. The right of an accommodation endorser to force the creditor to go upon the prior party was recognized in *Coles* v. *Anderson*, 8 Humph. 489, a decision cited with approval in *Kinzer* v. *Helm*, 7 Heisk. 676. It follows, from the principle of the decision above cited of *Watson* v. *Read*, that, if the creditor do acquire a lien on the property of the person primarily liable, he cannot afterwards release it to the detriment of one only secondarily liable. An endorser is, like a surety, entitled, upon payment of the debt, to be subrogated to the securities

of the creditor, and any act of the latter prejudicial to this equity, which would discharge the surety, will also discharge the endorser. *Union Bank* v. *McClung*, 9 Humph. 98 ; *Gould* v. *Robson*, 8 East, 576 ; *Hubly* v. *Brown*, 16 Johns. 70. And it is clear the remedy is in equity, not at law.

I think, therefore, that the case made by the bill for relief, because of the levy upon the property of Battle, and the subsequent abandonment of that levy, is proper for equitable relief, although defectively stated. There can be no doubt that the plaintiff in an execution may, without prejudice to his rights, abandon a levy on realty improvidently made, and which could not result in any benefit. *Bank of Tennessee* v. *Turney*, 7 Humph. 271. Strictly, the bill ought to have negatived any such justification. But I have held that a motion to dismiss a bill for want of equity on its face is limited, as a mode of defence, to cases where there is no matter of equity whatever, and will not reach a case proper for equitable relief, but defectively stated. *Quinn* v. *Leake*, 1 Tenn. Ch. 67. The same rule will apply, and with greater force, to a motion to dissolve an injunction for want of equity on the face of the bill. For, the injunction being only intended to preserve the *statu quo,* the want of equity ought to be palpable to justify its dissolution. The motion must be disallowed.