## BOUGHTON and ROWELL vs. THE BANK OF ORLEANS and POND.

Whether one of the defendants in an execution, who is a mere surety for his co-defendant, has any remedy in the court of chancery against a sheriff who has an execution against both, and who, with the knowledge of the fact that one of such defendants is primarily and equitably liable for the whole debt, neglects to sell the property of the principal debtor, whereby the same is lost; and where such sheriff is subsequently proceeding, upon the execution, against the property of the surety? Quære.

Where the question of primary liability, as between the defendants in an execution, is doubtful, the sheriff is not bound, at his peril, to decide upon the conflicting claims of the defendants to equity, as between themselves.

In such a case, if the defendant who claims to be the surety wishes to have the execution enforced against his co-defendant, who is primarily liable for the payment

Boughton v. The Bank of Orleans.

of the judgment, he should apply to the equitable powers of the court out of which the execution issued, upon due notice to his co-defendant, for a direction to the sheriff to resort to the property of such co-defendant in the first place.

As between the principal debtor and his surety, the property of the former is primarily liable, and should be first resorted to, for the payment of the debt. And where the sheriff, with a full knowledge of the facts, wilfully violates the principle of equity in this respect, the court of chancery, upon a bill filed for that purpose, will relieve the surety, if the surety cannot obtain satisfaction for the injury by an action upon the case against the sheriff.

The interest of a person holding a contract for the purchase of land, is not bound .by the docketing of a judgment against him; and his interest in the land cannot be sold by execution upon such judgment.

Real estate held in that manner forms an exception to the general rule, that the interest of a defendant in lands of which he is in possession may be sold on execution against him.

A valid and binding agreement, by a creditor, with the principal debtor, to stay the proceedings upon a judgment against the latter, if made without the consent of a surety, will, in equity, discharge the surety from any further liability to the creditor.

And if one of two joint sureties assents to such agreement for a stay of proceedings against the principal debtor, he thereby becomes liable, in equity, for the payment of the whole debt, as between him and his co-surety, if it cannot be collected of the principal debtor.

THIS was an appeal from a decree of the vice chancellor of the eighth circuit, allowing the demurrer of E. Pond, one of the defendants, and dismissing the complainant's bill, as to him, with costs. The facts of the case as stated in the bill were substantially as follows:

The complainants and A. Darling made a promissory note, for the benefit of Darling, payable to the Bank of Orleans; which note upon its face showed that it was signed by the complainants merely as the sureties of Darling. The note was discounted by the bank, for the benefit of Darling, and not being paid when it became due, the bank brought a suit thereon against all the makers, and recovered a judgment against them jointly, in the supreme court, on the 7th of July, 1837. A few days after the entry of the judgment an execution was issued thereon, against the property of the judgment debtors, to E. Pond, one of the defendants in this suit, as sheriff of the county of Monroe. At that time the complainants, as well as Darling, had real estate in the county of Monroe, which was

subject to the lien of the judgment and liable to be sold on the execution. And, as the bill alleged, Darling had sufficient property at that time to have satisfied the judgment. But the bank, without the knowledge or consent of H. Rowell, one of the complainants in this suit, made an agreement with Darling, the principal debtor, in consideration of his withdrawing his defence in another suit, to stay all proceedings for the collection of this judgment for the term of one year; and the proceedings were stayed accordingly. In the summer of 1839, Boughton and Rowell, the complainants, requested the sheriff to sell the real estate of Darling to satisfy the execution. His real estate then consisted of a farm, containing about 99 acres of land, to which he had the title, and which was subject to the lien of a mortgage which was prior to the judgment, and about 87 acres of land which he was in possession of under a contract of purchase from Rowell, one of the complainants, and upon which contract a small part of the purchase money had been paid. And the bill alleged that these two pieces of land were worth more than enough to pay the amounts due upon the judgment and upon the prior mortgage on the 99 acres thereof. The sheriff, thereupon, advertised the two pieces of land to be sold, on the execution, in October, 1839. And the complainants engaged H. C. Smith, as their agent and friend, to attend the sale and bid upon the two pieces of land to the full amount of the judgment. He attended accordingly, at the time and place appointed for the sale, and offered to bid to the amount of the judgment, and to pay his bid; but the sheriff neglected or refused to sell the property, and never afterwards attempted to sell the same. The farm subsequently became depreciated in value, by waste and otherwise, so that upon a foreclosure of the mortgage the 99 acres, upon which it was a prior lien, only sold for sufficient to pay the amount due upon such mortgage and the costs of foreclosure. Darling, in the meantime, had become insolvent, and had died, leaving no property of any value except his interest in the 99 acres of the farm upon which the mortgage was a lien.

Subsequent to the foreclosure and sale under the mortgage,

the sheriff attempted to enforce the execution against the lands of the complainants, respectively, upon which the judgment was a lien; giving out as a reason why he neglected to sell the lands of Darling in 1839, some pretended orders from the agents of the bank to refrain from selling the same under the execution. But to a bill filed by the complainants against the bank to restrain proceedings against their individual property, the bank put in an answer denying that its agents or officers ever gave the sheriff any instructions not to proceed and sell the lands of Darling; and the sheriff being unable to furnish the complainants with any evidence of the fact of such directions, they dismissed their bill in that suit. And in January, 1843, they filed their bill in this cause, charging the matters above specified, and also stating that at the time of the sheriff's neglect or refusal to proceed and sell the lands of Darling, the sheriff, as well as the bank, knew that the complainants were mere sureties for the amount of the judgment, and that Darling was the real debtor. The complainants further stated, that they were ignorant whether the neglect of the sheriff to proceed and sell the lands of Darling, upon the execution, was occasioned by the instructions of the agents or officers of the bank, as alleged by him, or by his own wrongful act, as insisted by the bank in its answer in the former suit. The bill therefore contained a prayer in the alternative, that if the wrong in not selling the property of Darling upon the execution was the fault of the sheriff exclusively, he might be restrained from selling the property of the complainants upon the execution, and might be decreed to pay the amount of the judgment to the bank; or if otherwise, that the bank and the sheriff might both be perpetually enjoined from proceeding against the complainants, by the execution or otherwise, to collect the amount due upon the judgment; or that the complainants might have such other or further relief in the premises as should be just.

The defendant E. Pond, the sheriff, demurred to the bill for want of equity; and also because the suit was not commenced within three years after the right of the complainants accrued; and likewise upon the ground that their remedy, if any, was

at law. The vice chancellor decided that the sheriff was not a proper party for any purpose ; and that if the complainants had any remedy against him on account of the loss charged to have been sustained by them in consequence of his improper conduct, or negligence, in not selling the property of the principal debtor upon the execution, which he thought they had not, it was only by an action on the case. He therefore made the decree appealed from, as to the defendant Pond.

*S. Boughton,* for the appellants.

*G. H. Mumford,* for the respondent.

THE CHANCELLOR. It is not necessary to examine the question, in this case, whether one of the defendants in an execution, who is a mere surety for his co-defendant, has any remedy in this court against a sheriff who has an execution against both, and who, with the full knowledge of the fact that one of the defendants in such execution is primarily and equitably liable for the whole debt, neglects to sell the property of such principal debtor, whereby the same is lost ; and where such sheriff is subsequently proceeding upon the execution against the property of the surety. It is certain that in a case where the question of primary liability is doubtful, the sheriff is not bound, at his peril, to decide upon the conflicting claims of the defendants to equity as between themselves. For in such a case, if the defendant who claims to be the surety wishes to have the execution enforced against his co-defendant, who he insists is primarily liable for the payment of the judgment, he should apply to the equitable powers of the court out of which the execution issued, upon due notice to his co-defendant, for a direction to the sheriff to resort to the property of such co-defendant in the first place. But the principle of equity is well established that the property of the principal debtor is primarily liable, and should be first resorted to. And if the sheriff, with a full knowledge of the facts, wilfully violates the principle of equity in this respect, the surety certainly is not without reme-

dy. For if he cannot recover in an action upon the case against the sheriff, this court ought, unquestionably, to grant him relief, upon a bill filed for that purpose.

In the case under consideration, however, the bill does not show that the complainants have become charged with the payment of this debt in consequence of the wrongful act of the sheriff. For it is not shown that the debt could have been collected out of the property of Darling, at the time the sheriff refused to proceed and sell the farm, in October, 1839.

It is indeed alleged that the value of the two pieces of land, of which the farm was composed, was sufficient to pay the judgment and mortgage at that time; and that the agent of the complainants offered to bid upon both pieces to the full amount of the execution, and to pay his bid. But the title to the 87 acre piece was not in the defendant Darling, and that part of the farm could only be sold, upon the execution, as the property of Rowell, one of the sureties. For by the express terms of the revised statutes, the interest of a person holding a contract for the purchase of lands, is not bound by the docketing of a judgment; and his interest in the land, as the purchaser, cannot be sold by execution upon such judgment. (1 *R. S.* 744, § 4.) Property thus held under a contract now forms an exception to the general rule, that the interest of a defendant in lands of which he is in possession, may be sold on execution. (*Griffin* v. *Spencer,* 6 *Hill's Rep.* 525. *Talbot* v. *Chamberlin,* 3 *Paige's Rep.* 219.) It is true, the judgment was a lien upon the legal title of Rowell, one of the sureties in such judgment, and upon his interest in the land; which interest was equal to the amount of the purchase money still due to him. But the purchaser under the execution would have taken such legal title subject to the equitable right of Darling to the land, upon the payment of the balance of the purchase money due upon the contract; which equitable right of Darling would not have been divested by the sheriff's sale. Nor would the purchaser have acquired the right to the possession of the land, as against Darling, by that sale, unless Rowell, the vendor in the contract, would have been entitled to the possession if no

sale thereof under the execution had been made. No right whatever, as against the principal debtor's interest in the land, would have been acquired by the sale of the 87 acre lot under the execution. (*Grosvenor* v. *Allen*, 9 *Paige's Rep.* 74.) The appellants, therefore, cannot complain that the sheriff did not sell the interest of one of them in that part of the farm upon the execution. And I have not been able to find any allegation in the bill which shows that the 99 acre lot, at any time after the execution came into the hands of the sheriff, was of sufficient value to pay the amount of the judgment, or any part of it, in addition to the amount of the mortgage which was a prior lien upon that part of the farm of Darling.

There is indeed an allegation in the bill, that at the time of the recovery of the judgment, Darling had sufficient real and personal estate to satisfy the judgment, if due diligence had been used in its collection. And perhaps it may be fairly inferred that such real and personal estate was in the county of Monroe; although that is not expressly stated in the bill. But the sheriff is neither legally nor equitably liable to the complainants for not levying upon and selling the property at that time. For it is not stated that any personal estate which was liable to levy and sale, was in the possession of Darling at the time the execution came to the hands of the sheriff; which was several days after the judgment was entered.

Again; the bill shows that the officers or agents of the bank made a valid and binding agreement with Darling to stay the proceedings upon the judgment against him, for a year; and that this was done without the knowledge or consent of the complainant Rowell. This, of course, discharged Rowell, in equity, from any further liability to the bank as one of the sureties of Darling. And if Boughton assented to that stay of proceedings, as I infer he did, he thereby became liable, in equity, for the payment of the whole judgment, as between him and Rowell his co-surety; if it could not be collected of Darling, the principal debtor. And the sheriff could not be liable to the complainant Rowell for any neglect to levy on and sell the property of Darling, during the time that the bank had stayed

Boughton *v.* The Bank of Orleans.

the proceedings without Rowell's knowledge or consent. Nor could the complainant Boughton complain that the sheriff acted upon the agreement between Darling and the bank, to which Boughton, as one of the sureties, had himself assented.

The two complainants, therefore, have separate and distinct rights and interests in this matter, upon the case attempted to be made by this bill; and they should not have joined in one suit. If the allegation in the bill is true, as to the agreement made by the bank, to stay the proceedings, about the time of the recovery of the judgment, Rowell has a right to file a separate bill against the bank to stay all further proceedings against him upon the judgment; upon the ground that such agreement was an equitable discharge of his liability as surety. But if Boughton assented to that stay of proceedings, he was not discharged thereby; and he should not have joined with Rowell in a bill, against the bank, for relief on that ground. On the other hand, if Rowell was discharged from his liability by this act of the officers or agents of the bank, as the statements in the bill clearly show that he was, he has not been injured by any subsequent neglect of the sheriff to proceed and sell the farm of Darling, upon the execution. And he should not have joined with Boughton in a bill, against the sheriff, to obtain relief on that ground; as Boughton was the only person who had a legal right to complain of that act, or rather that omission of duty by the sheriff.

In any view which I have been able to take of this case, therefore, the bill of the complainants cannot be sustained against the respondents. And the decree appealed from must be affirmed, with costs.