Storms *v.* Thorn.

Herkimer Special Term, June, 1848. *Allen,* Justice.

### Storms and others *vs.* Thorn and others.

Where, after the recovery of a judgment against principal debtors and their surety, the plaintiffs entered into a valid agreement with the principal debtors, to delay proceedings to collect the judgment, and did suspend proceedings accordingly; *Held,* that the surety was thereby discharged from his liability on the judgment; and a creditor's bill, founded on such judgment, was dismissed, as to him, with costs.

In equity there is no merger of the relation of principal and surety existing between several debtors, by the recovery of a judgment against them jointly. The rights of a surety are recognized as well after, as before, judgment, and will be protected.

In Equity. This was a creditor's bill filed by the plaintiffs, as assignees of a judgment, against Thorn, Waterman and others, the judgment debtors. The bill was taken as confessed by all the defendants except Waterman; and the suit was defended by him only upon the ground that he was surety for the other defendants in the contract upon which the judgment was recovered; and that after the recovery of the judgment the plaintiffs entered into a valid agreement with the principal debtors to delay proceedings to collect the judgment, and did suspend proceedings in pursuance of that agreement. The facts relied upon were established by the proofs.

Storms *v.* Thorn.

*C. H. Doolittle*, for the plaintiffs.

*H. A. Foster*, for the defendant Waterman.

ALLEN, J. This was a creditor's bill filed by the plaintiffs as assignees of a judgment against the judgment debtors, and is defended by Waterman, one of the debtors, upon several grounds; one only of which will be considered. It appears by the pleadings and proofs that Waterman was an accommodation endorser, for the other defendants, of the promissory note upon which the judgment was recovered against all the defendants as parties thereto, under the act of 1832, and that after the recovery of the judgment an execution was issued thereon and levied upon the property of Waterman; after which, in July, 1843, an arrangement was made between the principal debtors and the plaintiffs, without the knowledge or assent of the surety, by which the plaintiffs became the purchasers and assignees of the judgment, and agreed that the execution and proceedings thereon, and upon the judgment, should be stayed for six months from that time. Which agreement was performed by the plaintiffs, and nothing further was ever done under that execution. In 1844, another execution was issued against all the parties to the judgment, upon the return of which, unsatisfied, this proceeding was founded. If the relation of principal and surety, as between the makers of the note and their accommodation endorser, continued after the recovery of the judgment, then the giving time to the makers, without the assent of the endorser, operated to discharge the latter from his liability. (*Chit. on Cont.* 534. *Story on Bills*, § 425 *et seq.*) It is claimed, however, that by the judgment that relation was merged, and that thereby all parties became principal debtors, with all the duties, obligations and liabilities incident to that character. Whether at law the parties would be at liberty to go back of the judgment and inquire into the consideration, with a view to establish the relation of principal and surety between the judgment debtors, it is not necessary to inquire. For although there appears to be no good reason why the

rights of a surety should be peculiarly the subject of equity jurisdiction, the decisions of courts of law have not been uniform upon this subject. (*La Farge* v. *Herter*, 3 *Denio*, 157, *and cases cited by Beardsley, J. Bray* v. *Manson*, 8 *Mees. & Wels.* 668. *Commonwealth* v. *Miller's Ex'r*, 8 *Serg. & Rawle*, 452. *Letchenthaler* v. *Thompson*, 13 *Id.* 157. *Finney* v. *Commonwealth*, 1 *Penn. Rep.* 240. 16 *Mass. Rep.* 26. 2 *Pick.* 614.)

But whatever may be the rule at law, in equity sureties have been permitted to avail themselves of defences arising out of their situation as sureties which would have been denied them at law by reason of the character of their obligations, such obligations being by bonds and other specialties. (*Day* v. *Prendergast*, 5 *Barn. & Ald.* 187. *Story Eq. Jur.* § 325, *note* (1.) *Id.* § 883. *Bray* v. *Manson, supra.*)

The reasons which have induced courts of equity to grant relief to sureties in such cases, and to allow the suretiship to be established by extrinsic evidence, apply with full force to cases in which judgments have been recovered against the principal and surety. In both cases, the relief to the surety must be based upon rights acknowledged and protected in courts of equity, not recognized in courts of law ; although it is difficult to see why the equitable rights of the surety, being well known and established, they should not be regarded by courts of law as determining the obligations of the creditor to act in good faith, in all things, towards the surety. The rule in equity is based in part upon the right of the surety to be subrogated to the rights of the creditor against the principal debtor, and therefore the creditor may do nothing which will impair this right of the surety ; or if he does such act, the surety is thereby discharged from his liability. The right of a surety to be subrogated after, as well as before, judgment, is not doubted, and that right is under the protection of the court, and ought not to be disregarded. In this case, if the defendant Waterman, the day after the arrangement between the principals and the plaintiffs, had paid the judgment, as he had a right to do, he would have been entitled to be subrogated to all the rights of

the plaintiffs against the debtors, and yet he would have received it subject to the valid agreement staying all proceedings for six months. (*New-York State Bank* v. *Fletcher*, 5 *Wend.* 85. *Orleans Bank* v. *Walker*, 1 *Hill*, 652.) Is there any good reason, or technical rule of law, which gives to this agreement a less or different effect upon the rights of the surety, in the case of a judgment, than in the case of a bond or other specialty? I can see none. Equity will go behind the judgment, to establish the rights of the surety to subrogation, and courts of law will go back of the judgment to establish the prior relations of the parties in an action for money paid by a surety for his principal, as well as for other purposes. (*Betts* v. *Bayley*, 2 *Pick.* 572. *Wyman* v. *Mitchell*, 1 *Cowen*, 320. *In re Wendell*, 19 *John. Rep.* 153. *Raymond* v. *Merchant*, 3 *Cowen*, 147.)

In *Bangs* v. *Story*, (10 *Paige*, 11, *affirmed in error*, 7 *Hill*, 250,) the precise point was adjudicated, and the chancellor, as well as the court for the correction of errors, held the surety discharged in equity by dealings with the principal debtor, after judgment, in derogation of the rights and without the assent of the latter.

The same principle was reiterated and confirmed in *Boughton* v. *Bank of Orleans*, (2 *Barb. Ch. Rep.* 458.) In the latter case, the Bank of Orleans had recovered a judgment against the complainants and one Darling, upon a note made by them, in which the complainants were sureties for Darling; and the chancellor held that a valid and binding agreement by a creditor, with the principal debtor, to stay the proceedings upon a judgment against the latter, if made without the consent of a surety, would, *in equity*, discharge the surety from any further liability to the creditor. Although he held that the complainant's bill, filed for relief on account of such agreement, was properly dismissed for other reasons.

The cases of *Bay* v. *Tallmadge*, (5 *John. Ch. Rep.* 305,) and *Lenox* v. *Prout*, (3 *Wheat. Rep.* 520,) are cited as establishing a principle in conflict with the decisions cited. But it is believed that the questions in controversy and actually de-

Storms v. Thorn.

cided do not necessarily conflict with the principle decided by Chancellor Walworth and approved by the court of errors.

In *Bay* v. *Tallmadge*, the question as to the effect of a judgment upon the relation of the parties to each other did not arise, and was not necessarily decided. It is true the chancellor alludes to it, but rests the decision of the cause upon other grounds. He really bases his decision upon the ground that the defendants, by their acts, had waived all the equities upon which, but for such waiver, they might have insisted, and upon the ground that there was no valid agreement to postpone the sale of the property of the principal debtor, for the want of a consideration to support it. In *Lenox* v. *Prout*, there was no dealing with the maker of the note by the plaintiff in the judgment, which would have discharged the endorser if the relation of principal and surety had been conceded to exist between the maker and endorser. There was a mere omission to enforce the collection of the judgment against the maker, and the court very properly held that did not afford the endorser any equitable ground for relief. But Livingston, justice, in delivering the opinion of the court, assigns as a reason, that by the judgment both had become principal debtors. The decision was right, upon well established principles, but the reason given was not necessary to the decision, and although entitled to great respect, is not controlling as an authority to overrule the decisions of the courts of our own state, supported, as I believe them to be, by well established principles. I can come to no other conclusion than that in equity there is no merger of the relation of principal and surety between the debtors in the judgment, and that the rights of the surety are recognized as well after, as before, judgment, and must be protected. By the agreement of July, 1843, Waterman was discharged from his liability on the judgment, and the bill must be dismissed as to him with costs. The plaintiffs are entitled to the usual decree against the other defendants.