Opinion of the court by
Mr. Chief Justice Howk.
This suit was commenced in the Gibson Circuit Court by the appellees, William M. Cockrum, William L, Hargrove, James H. *510 McConnell, Edward Richard and John C. Blythe, as plaintiffs, against the appellants, the Vincennes National Bank and David Wilhite, and certain other defendants, who have been named as appellees, in this court. The complaint of the plaintiffs contained two paragraphs, and the object and purpose of their suit were to perpetually enjoin the appellant, the Vincennes National Bank, as the judgment-plaintiff, and the appellant, Wilhite, as the coroner of Gibson county, from collecting or attempting to collect certain judgments of the Gibson Circuit Court, and certain executions issued thereon to said coroner, described in said complaint, from the plaintiffs in this action.
Jefferson Turpin and John Sloan, two of the defendants in the plaintiffs’ complaint, and named as appellees in this court, appeared by counsel and filed what is called their cross-complaint, alleging therein substantially the same facts as were alleged in the plaintiffs’ complaint, and praying for themselves substantially the same relief as against the appellants, as the appellants had prayed for in their complaint.
The appellant, the Vincennes National Bank, separately demurred to the complaint and said cross-complaint, and before these demurrers were passed upon, on its application and by the agreement of the parties the venue of the action was changed to the Vanderburgh Superior Court. The complaint and cross-complaint having been duly verified, and the proper undertakings having been given and approved, a temporary restraining order was granted as prayed for, until the final hearing of the cause.
In the court below, the demurrers of the Vincennes National Bank to the complaint and the cross-complaint were severally overruled, and its exceptions were duly saved to each of these decisions. The appellants, the Vincennes National Bank and said David Wilhite, jointly answered the complaint and the cross-complaint, by general denials of their respective allegations. The issues joined were tried by a jury, and a verdict was returned finding for- the plaintiffs below on their complaint and for the appellees, Turpin and Sloan, defendants below, on their cross-complaint. The appellants’ motion for a new trial having Been overruled, and their several exceptions saved to this ruling, the court rendered judgments for perpetual injunctions, in accordance with the prayers of the complaint and the cross-complaint.
*511 In this court, errors have been assigned by the appellants, which in question the sufficiency of the facts stated in the complaint and in the cross-complaint to constitute causes of actfon, and the correctness of the rulings of the Superior Court thereon, and of its decision in overruling their motion for a new trial of this cause.
The only material difference between the complaint and the cross-complaiqt, is the difference in the names of the parties, plaintiffs and defendants. The subject-matter of the cross-complaint, and its allegations of fact and prayer for relief, are substantially the same as those of the complaint. Therefore, we need only consider the sufficiency of the facts stated in the complaint to constitute a cause of action; for, if the complaint is sufficient, so also is the cross-complaint, or if the complaint is bad, the cross-complaint is also insufficient. The two paragraphs of the complaint, and the two paragraphs of the cross-complaint, differ from each other only in this, that the judgment described in one paragraph of the complaint or cross-complaint, is not the judgment described in the other paragraph of the complaint or cross-complaint. So that we need only consider the sufficiency of one paragraph of the complaint, as our decision in regard to one will determine the question as to each paragraph of the cross-complaint.
In the first paragraph of their complaint, the plaintiffs below alleged in substance that, by the consideration of the Gibson Circuit Court, the appellant, the Vincennes National Bank, on the 2d day of February, 1875, recovered judgment against Jacob W. Har-grove, Caleb Trippett, Richard M. J. Miller and Samuel Sterne, for the sum of $5,628; that, by the terms of said judgment, the said Miller and Sterne were adjudged to be the sureties of the said Hargrove and Trippett, and it was ordered that the property of said Hargrove and Trippett should be exhausted before the property of said Miller and Sterne should be levied on to satisfy said judgment, or any part thereof; that, afterwards, on the 18th day of March, 1875, an execution was issued on said judgment against all said judgment-defendants to the sheriff of Gibson county; that while said execution was in the hands of said sheriff, and before the expiration of the time allowed by law for the stay of execution on said judgment, the said Jacob W. Hargrove and Caleb Trippett, and the said Vincennes National Bank, made and entered into an *512 agreement, whereby it was stipulated and agreed that, if the said Hargrove would, in a short time, pay to said bank whatever sum of money he could raise, being as much at least as the interest on said judgment, equivalent to the interest usually paid to banks, and being about eleven per cent, per annum, and also the interest on other judgments held against him by said bank, and if the said Hargrove and Trippett would each procure good and solvent sureties to enter themselves as replevin bail upon the said judgment, and on other judgments, held by said bank against said Hargrove and Trippett, the said Hargrove procuring such bail for the one-half of the judgment, and the said Trippett procuring such bail for the other half of said judgment—then the said bank would forbear to issue execution on the said judgment for the period of one year from the date of entering such replevin bail on said judgment; that after the making of said agreement, the said Jacob W. Hargrove procured the plaintiffs in this suit to sign an instrument, which was partly printed and partly written on the back of said execution, which was then in said sheriff’s hands, which said instrument is in the words and figures following, to-wit:
“ We acknowledge ourselves replevin-bail for the payment of Jacob W. Hargrove’s one-half of the judgment, upon which the within execution has issued, together with the interest and costs accrued and to accrue, at or before the expiration of the time allowed by law for the stay of execution on such judgment.”
(Signed,) “William L. Hargrove,
“William M. Cockrtjm, “John H. McConnell,
“ Edward Richard,
“July 31, 1875. “ J. C. Blythe.”
“Taken and approved by me, July 31, 1875.”
(Signed,) “F. W. Hauss, Sheriff G. Co.”
And the plaintiffs alleged, that, at the same time and in like manner, the said Caleb Trippett procured the defendants, Jefferson Turpin and John Sloan, to execute and sign a written instrument, indorsed on said execution, whereby the said Turpin and Sloan acknowledged themselves replevin-bail for said Caleb Trippett for the payment of the undivided one-half of the judgment, upon *513 which the execution was issued, with interest and costs accrued and to accrue thereon, at or before the expiration of the time allowed by law for the stay of execution on such judgment. And after the execution of said instrument, in pursuance of said contract so made with said Tippett and Hargrove for forbearance and indulgence, the bank ceased to make any effort to collect said judgment, for one year from July 31, 1875, and forbore to issue execution on said judgment, from that date until said year had expired, and made no effort whatever to collect the amount of said judgment, or any part thereof, except that said bank, by its attorney, demanded and received of said Jacob W. Hargrove, on or about the-day of December, 1875, the sum of $1,600, which was paid, in pursuance of said contract with said bank, and was applied partly on said judgment, and partly on other judgments of said bank, and on other judgments against said Hargrove and Trippett in favor of other parties. And the plaintiffs said that after said 31st day of July, 1875, and during the year following, while the said agreement was so observed and complied with by said bank, the said Jacob W, Hargrove and Caleb Trippett were the owners of large amounts of personal property, consisting of hogs, horses, grain, household furniture, farming implements, and musical instruments, a stock of dry goods and groceries, and divers other goods and chattels, also choses in action, promissory notes and accounts, all of a value much greater than the amount of said judgment, and all of which by proper diligence could have been subjected to the payment of said judgment, all of which property was sold by other persons to pay the debts of said Hargrove and Trippett, or was disposed of by them before the year had expired, during which said bank had agreed to suspend proceedings to collect said judgment; whereby, at the expiration of said year, the said Hargrove and Trippett became and were, and ever since had been, insolvent, and whereby the plaintiffs lost the benefit of any money that might have been realized by the sale of the aforesiad property of said Hargrové and Trippett.
And the plaintiffs said, that they executed the instrument above set out, for the accommodation of said Jacob W. Hargrove, who wilfully or indvertently concealed from them the fact that he had made the contract with said bank above set out, and that they had *514 no knowledge, intimation or information whatever, that said contract had ever been made or entered into by said Hargrove and the bank, until after an execution was issued on said judgment, as hereinafter stated; that they, the plaintiffs, were all farmers by occupation, and were ignorant of the law, and did not know when said judgment had been rendered, or when the stay would expire ; that said instrument was written by another person, and they signed it without knowing what its legal effect was, believing only that they were, at the time they executed said instrument, becoming the stay or bail of said Hargrove for his one-half of said judgment, and were assuming no other liability whatever; that at the time they executed said instrument, they inquired of the sheriff what liabilities they thereby assumed, and they were told by him that they would become the sureties of all the parties to said agreement, and that all the property of the said parties would have to be sold before their property could be touched, and on the faith thereof, and without any knowledge or intention whatsoever of any contract having been made to delay the collection of said judgment for one year, or for any other time, they executed the said instrument; that the plaintiffs cannot say, of their own knowledge, whether the said Samuel Sterne had knowledge of the execution of said contract for delay or not, but that the said Sterne claimed that he had no knowledge or information of the making or execution of said contract, and because of the facts herein stated the said Sterne claimed, that he had been released from all liability on said judgment, but the plaintiffs said, from information and belief, that the said Richard M. J. Miller, one of the sureties in said judgment, had no knowledge or information of the existence of said contract, and did not consent to the delay therein provided for; that on the contrary thereof, it was expressly agreed and stipulated, as the plaintiffs were informed and believed, between the said bank and the said Hargrove and Trippett, by their attorney, that the said Miller should not have any notice or information of the making of said contract; and that said Miller had, on account of the making and performance of said contract for delay, been released from any liability on said judgment, whereby the plaintiffs would lose, unless relief shall be granted them in this action, the right to have said Miller’s property sold, before their property could be levied. *515 on, and the benefit of a judgment preserved against him for any sum they might pay; and they said, that if it should appear, that said Sterne had also been released from liability on said judgment, they would in like manner be compelled to pay whatever portion of said judgment he should have paid, and would lose all remedy against him.
And the plaintiffs further said that after the said year had expired, during which the said bank had agreed to forbear any effort to collect said judgment, the said bank procured an execution to issue on said judgment, on the 6th day of April, 1877, and to be delivered to the sheriff of said county; and while said writ was in the sheriff's hands, the said bank, by its attorneys, and the plaintiff below in this suit, and the defendants therein, except said Hargrove and Trippett, appeared in the Gibson Circuit Court, on the 22d day of September, 1877, and the said plaintiffs moved the said court to ■quash said execution, and the motion was sustained by said court, and the said bank appealed from said orders, whereby said execution was quashed, to the Supreme Court of this State, where the same was then pending on a petition for rehearing; that the question to be finally determined by the Supreme Court was, whether or not the said instrument, signed by the plaintiffs below, was valid or was absolutely void, and that if the Supreme Court should decide that said instrument had no legal validity as replevin-bail, then no execution could ever be issued on said instrument against the plaintiffs below.
And the plaintiffs said, that afterwards, on the 18th day of February, 1879, the said bank procured another execution to be issued on said judgment against the said Jacob W. Hargrove, Caleb Trip-pett, Richard M. J. Miller, Samuel Sterne, as principals, and the plaintiffs below in this suit, and said Turpin and Sloan, as replevin bail, which execution was delivered to the appellant, Wilhite, as the coroner of said county, who had demanded payment thereof from the plaintiffs below and threatened to levy the same of their property; that, by reason of the facts above stated, they were not liable to pay any portion of said judgment; that the said instrument, so signed by them, was of no validity whatsoever and would not support an execution ; and that even if the said instrument ever had, at any time, any validity whatever, the said bank had waived, *516 forfeited and released, by its conduct and agreement, all right to enforce the same against the plaintiffs below or any of them; wherefore, they prayed for a restraining order, pending the suit, and, upon the final hearing, for a perpetual injunction, against the collection of, or any attempt to collect, the said judgment or execution, or any part thereof from them or either of them, and that the said instrument, so signed by them, be declared null and void.
The foregoing is a full and, in most respects, a literal statement of the allegations of the first paragraph of the complaint of the plaintiffs below. It is earnestly insisted by the appellants’ counsel, in their elaborate brief of this cause, that, taking this paragraph of the complaint in the strongest light in favor of the plaintiffs below, it does not contain such facts as show that they were discharged from liability, for the following reasons :
“First. It does not show that the alleged promise of the bank to delay execution was based upon a consideration that was valuable, new and operative in point of law.
“Second. Even admitting the consideration to be sufficient, the complaint does not show that the bank’s hands were tied, so that it could not proceed to collect by execution.
“Third. It does not show that the consideration was furnished before or at the time the alleged promise of the bank would begin to operate.
“Fourth. It does not appear that the replevin bail were not completely at liberty to pay off the judgment, when the stay expired, and proceed at once, under the statute (code, section 676), to sue out execution against the prior parties, and thereby reimburse themselves, or that they were in any degree debarred from filing an affidavit before the stay expired, under sections 431 and 432 of the code, and thereby compelling the bank to proceed by execution unless other bail was given.’’
We will consider and pass upon each one of the reasons thus assigned by the appellants’ counsel in support of their position, that the facts alleged in the first paragraph of the complaint were not sufficient to show, that the plaintiffs below were discharged from liability, in their enumerated order.
1. It is claimed by the appellants, that the first paragraph of the plaintiffs below did not show that they were discharged from *517 liability, because it did not appear therefrom that the alleged promise of the bank to delay the issue of execution was based upon any valuable, new or legal consideration. We do not think that this point is well taken. It was alleged by the plaintiffs below, that the bank promised to delay the issue of execution against the judgment defendants, in consideration of their promise to procure good and solvent sureties to enter themselves as replevin bail upon the said judgment, and to make certain payments thereon. The promises of the bank and of the judgment defendants were mutual promises, and the law is elementary in regard to such promises, that the promise of one is a sufficient consideration for the promise of other. Wilson v. Ray, 13 Ind. 1; Downey v. Hinchman, 25 Ind. 453; Bruce v. Smith, 44 Ind. 1.
2. The second point made by the appellants’ counsel, against the sufficiency of the first paragraph of the complaint, is that, admitting the consideration of the bank’s promise to delay execution to be sufficient, the paragraph does not show that the bank’s hands were so tied that it could not proceed to collect the judgment by execution. We fail to see this point in the light in which the appellants’ counsel have sought to present it, in their brief of this case. Under the allegations of facts, contained in the complaint, in connection with the promise of the bank for the stay of execution on its judgment, it seems to us that the judgment-defendant, in a proper suit for that purpose, if necessary, could have compelled the bank to keep and fulfill its promise. In such a case, it must be said, we think, in the figurative language of counsel, that the hands of the bank were so tied by its said promise, that it could not lawfully, and in good faith, proceed to collect its judgment by execution, until the expiration of the time covered by its promise.
3. The appellants’ counsel also claim, that the first paragraph of the complaint was insufficient, on the demurrer thereto, for the want of facts, because it did not show “ that the consideration was furnished before or at the time the alleged promise of the bank would begin to operate.” This objection to the sufficiency of the first paragraph of complaint, does not seem to us to be well founded. In our view of the contract or agreement, by and between the judgment-plaintiff, the bank, and the judgment-defendants, in regard to the stay of execution on such judgment, as the same is set forth in *518 each paragraph of complaint, it was never contemplated by the parties, or either of them, at the time such contract or agreement was made and entered into, that the consideration should be furnished before or at the time the bank’s promise should begin to operate. Indeed, we think that the terms of the contract or agreement, as stated in the complaint, show very clearly that it was not the intention or expectation of either of the parties thereto, that the consideration, in the sense in which the appellants’ counsel manifestly use the word, should be furnished by the judgment-defendants before, or at the time, the promise of the bank should take effect and begin to operate.
4. The fourth ground of objection urged by the appellants’ counsel to the sufficiency of the facts stated in the first paragraph of the complaint, is that it did not appear therefrom “ that the replevin bail were not completely at liberty to pay off the judgment,” at the expiration of the stay allowed by law thereon, and enforce the collection of the judgment by execution, in their own behalf, from the judgment defendants, and thereby reimburse themselves as such bail, “ or that they were in any degree debarred ” of their rights, under the provisions of sections 431 and 432 of the code, to procure the issue of execution immediately, on the judgment, “ unless other sufficient bail” should be entered thereon, which would discharge them as the original bail. 2 R. S. 1876, p. 205. The first paragraph of the complaint showed that the time allowed by law for the stay of execution, on the judgment described therein, expired on the first day of August, 1875, and that the plaintiffs below acknowledged themselves replevin bail on such judgment on the 31st day of July, 1875, only two days before the day on which the bank became entitled by law to the issue of an execution thereon against both the judgment defendants and the re-plevin bail. It may well be assumed, we think, that in becoming such replevin bail, the plaintiffs below were informed of the fact that, within two days thereafter, the bank could have lawfully sued out, on its judgment, an alias execution which would have at once become a valid lien on the large amount of personal property then owned by the judgment defendants, and alleged to have been of a value much greater than the amount of said judgment; and it may have been for aught that appears to the contrary in their com *519 plaint, that the knowledge of this fact may have had a controlling influence in inducing the said plaintiffs to become such replevin bail.
But, however this may have been, it certainly was not necessary to the validity or sufficiency of the cause of action stated in the first paragraph of the complaint, that it should appear therefrom that the replevin bail had been deprived of any statutory liberty, or debarred in any degree of any of their rights, under the code, by means of the contract or agreement, by and between the bank and the judgment defendants for a stay of execution for, at least, double the period of time állowed by law for a stay of execution. The law of this State does not contemplate that the judgment plaintiff may enforce the collection of his judgment from the property of the replevin bail thereon except as a dernier resort. Thus, in section 428 of the code, it is provided that “ the sheriff shall first levy upon the property of the judgment defendants, if sufficient can be found,” and that “ no property of the bail shall be sold while property of the original judgment debtor, subject to the execution, can be found in the county.” 2 R. S. 1876, p. 203; Elsonv. O’Dowd, 40 Ind. 300. In Frank v. Brasket, 44 Ind. 92, it appeared that execution plaintiffs had negligently failed to make a proper defense to a suit brought to enforce a pretended superior lien on certain property of the judgment defendant, on which the execution had been levied, hnd had consequently lost any benefit of the property levied upon; and it was held by this court that the execution plaintiffs had, by reason of such negligence, lost their right to proceed against the property of the replevin bail.
In the case at bar, the facts alleged in the complaint showed, that the large amount of personal property, owned by the judgment-defendants at the time the plaintiffs became replevin bail on the judgment, and all of which could, by proper diligence, have been subjected to the payment of the judgment, was sold and disposed of during the time covered by the contract or agreement by and between the bank and the judgment-defendants, for the stay of execution ; and that the replevin bail had thereby lost the benefit of all moneys that might otherwise have been realized from the sale of the said personal property.
Our conclusion is, that the facts stated in the first paragraph of complaint were sufficient to constitute a cause of action against the *520 appellants, and each of them, and that their demurrer thereto was correctly overruled.
In the appellants’ motion for a new trial, many causes were assigned therefor; but in discussing the alleged error of the trial court in overruling the motion for such new trial, the appellants’ counsel have directed “the attention of this court only to the two—that the verdict is not sustained by sufficient evidence, and that the court erred in instructing the jury.” Of the second of these two causes, all that is said by the appellants’ counsel, in argument, is as follows: “ The instructions, to which we call the attention of the court, are numbered four and five. The principles involved in them are the same as already discussed in reference to the sufficiency of the complaint. We therefore leave these instructions, without further comment.” As these two instructions contain, as we think, a fair and correct statement of the law, applicable to some material allegations .of the first paragraph of complaint, which we did not find it necessary to comment upon in considering the appellants’ objections thereto, we will set them out, in this connection as follows:
, 4. “ The law demands that sureties should be treated with the utmost good faith. It is the law, that a replevin bail is liable only after the principal and their sureties in the original judgment, have been exhausted. One, becoming replevin bail of defendants in á judgment, has a right to rely on the legal right to have all their property sold to satisfy the judgment, before his own shall be exposed to sale. If, prior to his becoming such bail, the judgment-plaintiff has made, for a sufficient consideration, any agreement with the debtor, by which he procures bail, that execution shall not issue for one year, and if there are persons, defendants, liable as sureties, and such agreement is concealed from them and is afterward executed, the original sureties would be released; and if the re-plevin bail, at the time he became such, was ignorant of the existence of such agreement, he would also be released by the delay in issuing execution.”
5. “In this case, it is not pretended that the Vincennes National Bank made any agreement with the plaintiffs, or defendants Turpin and Sloan, who executed the instrument, under which they were sought to be made liable to an execution. But it is claimed that, prior
*521 to the execution of such instrument, the bank made an agreement, for a sufficient consideration, with J. W. Hargrove and C. Trippett, by which the bank had agreed to withhold for one year on certain judgments, held by it against Hargrove and Trippett, as principals, and Sterne and Miller, as sureties, provided the judgments were procured by Hargrove and Trippett to be stayed.
“It is claimed that Hargrove and Trippett severally secured certain persons to become replevin bail on said judgments, each procuring bail for his half of the judgment. Persons, so becoming re-plevin bail, had a right to rely on the record of the judgment, unless they had information of the facts, which changed the relation of the parties. They had the right to presume, that they would be liable only after the property of all the defendants had been exhausted. And if a valid agreement had been made by the bank with Hargrove and Trippett, by which one year’s time was to be given to pay the judgment, and this agreement was concealed from the persons so becoming replevin bail, and Sterne and Miller, or either of them, were released, then the plaintiffs and the defendants, Turpin and Sloan, would also be released from liability; and if the jury find such to be the fact, they should find for the plaintiffs, and for Turpin and Sloan on their cross-complaint.”
It will be very readily seen, we think, that these two instructions were each applicable to the matters in issue in this case, and the propositions of law enunciated therein meet the approval of our judgments. It is the law, as we understand it, that if, after the recovery of a judgment against principal debtors and their sureties, the judgment-plaintiffs enter into a valid agreement with the principal debtors to delay proceedings to collect the judgment, and to suspend proceedings accordingly, the sureties will be discharged thereby from their liability on the judgment.
The law was so declared by the Supreme Court of. New York, in the case of Bangs v. Strong, 7 Hill 250. In that case it appeared that, after judgment, the judgment-plaintiffs and the principal debtor entered into an agreement for a credit of ten months to be given on the judgment. The court said : “ This agreement was made between the creditors and the principal debtor, without the consent of the surety. Where time is thus given to the principal debtor, by a^valid agreement, which ties up the hands of the cred *522 itor, though it be but for a single day, it is quite clear that the surety is discharged,” S. C. 10 Paige, 11. In Storms v. Thorn, 3 Barb. 314, it was held that in equity, there is no merger of the relation of the principal and surety between the debtors in the judgment, and that the rights of the surety are recognized as well after as before judgment, and must be protected. This equitable doctrine is expressly recognized in several provisions of the code of this State. It needs no argument, we think, to sustain the position that if by any act or agreement of the judgment-plaintiffs, any of the judgment-defendants are discharged from liability on the judgment, the replevin-bail thereon will also be discharged from such liability.
In Campan v. Seeley, 30 Mich. 57, 60, it is said, “ The obligations of special bail are in the nature of those sureties, always and properly recognized as being striotissimi juris, and discharged by anything which affects, in any manner, the nature or extent of the contract into which they have entered, in .such manner as might, by any reasonable probability, increase (if not merely to change) their risk or liability. What is thus said in relation to special bail, it seems to us, will.apply with equal force to the obligations of re-plevin-bail. If the rights or obligations of replevin-bail are changed, without his or their consent, by the act or agreement of the judgment-plaintiff, we are of the opinion that the replevin-bail will be thereby discharged.
We can. see no error in either of the two instructions to which alone our attention has been called, and, certainly, the appellants' counsel has not pointed out any error therein in their brief of the cause.
The only other ground upon which it is claimed in argument by the appellants’ counsel that the judgment below ought to be reversed, is that the verdict was not sustained by sufficient evidence. This point has been elaborately argued by the appellants’ counsel in their brief of this cause. It is not claimed by counsel, as we understand their argument, that there is no evidence in the record which tends to sustain the verdict and the decision of the court, but counsel claim, the verdict was not sustained by the weight of the evidence. It seems to us, from our examination of the record before us, that there was evidence introduced on the trial before *523 the court and jury, which fairly tended to sustain the verdict of the jury on all material points. In such a case, the rule may be regarded as settled, we think, that this court will not disturb the verdict of a jury on any question as to the weight of the evidence. Of course, many cases have come, and, doubtless, many more will come before the court, in which, if we were to pass upon the weight of the evidence, as we read it in the transcripts, as mere triers of the facts, our minds would lead fts to very different conclusions from those reached in the verdicts or decisions below. But this court long since decided, and has uniformly adhered to the decision, that it is not its province or duty, as an appellate court, to attempt the decision of questions or cases which depend for their proper decision upon the mere weight of the evidence.
Viehe & Evans and DeBruler & Hatfield, for appellants.
Buskirk & Yeager and Denby & Kumler, for appellee.
The reasons for this decision have been so often given by this court, that we need not repeat them here. It has seemed to us, in the case at bar, that the verdict of the jury is fairly sustained by the evidence in the record, and the reasonable inference which the jury may have properly deduced from such evidence. In such a case we cannot, and ought not to, disturb the verdict of the jury, after it has been approved and sustained by the judgment of the court, upon the mere weight or preponderance of the evidence. Cox v. The State, 49 Ind. 568; Rudolph v. Lane, 57 Ind. 115; The Ft. Wayne, etc., Railroad Co. v. Husselman, 65 Ind. 73.
The court committed no error, in our opinion, in Overruling the appellants’ motion for a new trial of this cause.
The judgment is affirmed at the appellants’ costs.
*524 PURE AIR.
We cordially endorse the following, from the New York Daily Register :
“Now, when so many legal noses are snuffing the fresh, pure air of the sea or the mountains, is a good time to make a good resolution about the atmosphere of the court rooms next winter. It is astonishing what power of adaptation the human system has. A judge sits all day in a crowded court room, and the bar around him, and they all get insensible to the vitiated character of the atmosphere. If one of them takes a turn of half an hour in the open air and returns with his lungs well filled with comparatively pure medium, he is at once shocked at the unseemly air he finds filling the close room.
“ The Connecticut officials are examining the railway servants for color blindness; and we are inclined to think that the principle ought to be extended There is such a thing as being odor-proof, and a man whe is thus constituted ought not to be the janitor, doorman, or messenger of a court room. The servitors on whom we depend in this respect ought to be keen-scented men of sensitive olfactory nerves, and they should be examined to ascertain their capacity to discern undesirable air. Imagine a competitive examination in this respect. It would be amusing but most useful in its results. The duty of attending to the ventilation and temperature of our court rooms is deserving of better attention, and its successful discharge deserving of higher honor than the profession give it. If our court rooms could have something of the same pure and invigorating air which the profession are now enjoying, the business would be better done, and done with far less wear and tear to life and health.”
Liberty Podes Not-:,), Nuisance.—The Pennsylvania court has been called upon to decide as to the legal status of a liberty pole, in the case of The City of Alleghany v. Zimmerman. The court takes the part of the pole in a vigorous, manner, and holds that “ the erection of liberty poles is a custom sanctioned by a hundred years, and interwoven with the traditions, memories, and conceded rights of a free people, and unless forbidden by the authorities is to be considered the exercise of a lawful license incident to citizenship ’’ So the flag of our country in freedom shall wave from liberty's time-honored pole. . '