

# THE ATTORNEY GENERAL

# OF TEXAS

AUSTIN 11, TEXAS

Grover Sellers

**WILLIAMSON**

**ATTORNEY GENERAL**

Honorable Weaver Baker, Chairman
Board of Control
Austin, Texas

Dear Sir:

Opinion No. 0-6965
Re: Authority of Board of Control
to contract with Federal
Government for lease of any
abandoned Army Camp or Camps
for eleemosynary service.

Your recent communication to this department reads, in part,
as follows:

"* * * In view of the fact that Texas has
more than one hundred training camps for armed forces,
a plan was suggested whereby we could acquire some of
these Forts to take care of the eleemosynary needs of
this State, particularly in the above mentioned fields.
The Legislature, by Concurrent Resolution, importuned
the Members of the Congress of Texas to help us, and
in addition thereto, duly enacted the following law:

"In Item 30 of Sec. 2 of S. B. 317, 49th
Legislature, Regular Session, we find the
following:

" 'The Board of Control is hereby authorized
to lease from any agency of the Federal Govern-
ment for nominal consideration any fort, army
camp or any other facility for any period of time
not to exceed ten years, for any use or purpose in
eleemosynary service, and any unexpended sums at
the end of the first year of the biennium, end-
ing September 1, 1947, is hereby appopriated out
of the maintenance and support funds as provided
for in House Bill No. 206 of the Forth-ninth Legis-
lature for the purpose of paying any such lease or
leases, repairs and reconverting such facility or
facilities to suit the needs of eleemosynary service,
paying all support and maintenance cost, utilities,
bills of every kind and character, and salaries neces-

sary to the operation thereof, for said biennium, or for the purpose of removing any property, or properties, acquired by the State for eleemosynary purposes from any location, or locations, unto State owned lands, and for the purpose of paying all expenses necessary and incident thereto, provided, however, that any salary, or salaries set up by the State Board of Control incident and necessary for the operation of such facility, or facilities, shall not exceed in cost the sum of money appropriated for the same, or similar positions in eleemosynary service.'

"You will further find as a part of the eleemosynary bill which was passed unanimously by both the House and Senate, the following appropriation measure:

" 'There is hereby appropriated to the State Board of Control any unexpended balance in any fund or item appropriated to any eleemosynary institution remaining at the end of the current fiscal year and at the end of the fiscal year ending August 31, 1946, to be used by the Board of Control for the following purposes only:

" '1. For the repairing, remodeling and/or renovating of any hospital, ward building, dormitory, or any other building at any Eleemosynary Institution.

" '2. For the replacement and installation of any plumbing fixtures, electrical wiring and fixtures, heating insulations, and any like equipment at any eleemosynary institution.

" '3. For construction of any new building, or building, and purchase of equipment and furniture necessary to place same in use at any eleemosynary institution, or at any other desirable site, where sufficient lands can be obtained without cost to the State.

" '4. For the support and maintenance for operation and use of any new or renovated building or buildings which shall include the employment of sufficient personnel to operate and maintain said building or buildings. Salaries of said employees shall not exceed those paid in similar institutions for same or similar work.

"'5.  The Board of Control shall during the biennium ending August 31, 1947, if labor and materials are available, spend $20,000.00 from said unexpended balance for construction of living quarters for employees of the Wichita Falls State Hospital.

"'6.  For the purpose of reconverting to State eleemosynary service any U. S. army camp or camps in the State of Texas which has or have been or may be abandoned by the armed forces of the United States. This to include the cost of any repairs or improvements necessary for the reconversion of said camp or camps, the cost of support, operation and maintenance thereof, and the cost of employing sufficient personnel in connection therewith.  Salaries of such employees are not to exceed those paid in similar institutions for the same or similar work.'

"In view of the aforesaid legislation, this Board has made application for three facilities formerly used by the armed forces; to wit:

"Fort Ringgold, Texas, as a tubercular hospital;

"The P. O. W. Camp at Brady, Texas, for a juvenile delinquent Negro Girls' School; and

"P. O W. Camp at Mexia, Texas, for handicapped children.

"There is special legislation supporting the maintenance of the P. O W. Camp at Brady for the aforesaid negro school and the hereinafter set out inquires are not directed to its operation.

"* * *

"Through the courtesy of members of your staff working with our legal representative from this Board before the organization of the 49th Legislature, the aforesaid legislation was written and incorporated in bills duly passed by the Legislature and hereinabove set out.  For your further information, the Comptroller of Public Accounts certified, as required by the Constitution, to the appropriation.

"Will you kindly advise this Board whether the provision of the aforesaid legislation are legal and effective,

Honorable Weaver Baker, page 4, O-6965

according to the reading thereof, and whether this Board is empowered to activate such abandoned facilities, reconvert and maintain them in the manner therein provided."

"Among the general powers of the Board of Control regarding eleemosynary institutions listed under Article 693, Revised Civil Statutes, are the following:

"1. To make rules and regulations for the government of the State eleemosynary institutions, not inconsistent with the Constitution and laws.

"5. To make all contracts and necessary arrangements for the erection of building or improvements upon the grounds of the institutions.

"7. It shall exercise a careful supervision over the general operations of such institutions and control the expenditures, and direct the manner in which their revenue shall be disbursed.

"8. It may take and hold in trust any gift or devise of real or personal estate for the benefit of such institution and apply the same as the donor or devisor may direct."

Section 35 of Article 3 of our Constitution provides, in part, that:

"No bill, (except general appropriation bills, which may embrace the various subjects and accounts, for and on account of which moneys are appropriated) shall contain more than one subject, which shall be expressed in its title."

The caption to the Eleemosynary Appropriation Bill of the 49th Legislature, more specifically designated as H. B. 206, Chap. 237, 49th Legislature, Regular Session, reads as follows:

"An act making appropriations for the support, maintenance and improvement of the Eleemosynary and Reformatory Institutions of the State of Texas for the two year period beginning September 1 1945, and ending August 31, 1947; and prescribing certain regulations and restrictions in respect to the expenditure of said appropriations; and declaring an emergency." (Emphasis ours)

The caption to the Departmental Appropriation Bill of said Legislature, more specifically designated as S B. 317, Chap. 378,

49th Legislature, Regular Session, reads, in part, as follows:

"An Act making appropriations for the support
and maintenance of the executive and administrative de-
partments and agencies of the State Government for the
two-year period beginning September 1, 1945, and ending
August 31, 1947, and for payment of other specified claims
and items; * * *proving for the Board of Control to
negotiate purchase of Federal commodities; * * *providing
that the Board of Control may be authorized to lease and
operate any army camp or fort from the Federal Government;
and providing specific limitations and regulations with refer-
ence to the expenditure of the appropriations made herein;
and declaring an emergency." (Emphasis ours)

It will be noted that Item 30 of Section 2 of S B. 317,
quoted in your communication to this department, appropriates to the
Board of Control for the purposes therein set forth any unexpended sums
at the end of the first year of the biennium ending September 1, 1947,
out of the maintenance and support funds as provided for in House Bill
No. 206 of the Forty-ninth Legislature.

Your quotations from the Eleemosynary Bill are from
Section 2 of said H. B 206. It is to be noted that said Section 2
appropriates to the Board of Control for the purposes therein set
forth and quoted in your communication, any unexpended balance in any
fund or item appropriated to any eleemosynary institution remaining
at the end of the current fiscal year (1944-1945) and at the end of
the fiscal year ending August 31, 1946. It should also be noted that
each portion of said two general appropriation bills quoted in your
communication applies strictly to eleemosynary service. Therefore,
all of said quoted provisions are germane to eleemosynary service,
and must be read and considered in connection with each other.

A careful reading of these provisions in said appropria-
tion bills convinces us that they do not violate Section 35 of Article
3 of our Constitution, said provisions are germane to and definitely
connected with the subject of the appropriations, viz: eleemosynary
service, as clearly covered by the caption to H. B. No. 206. Such ser-
vice, by general law,is under the management and jurisdiction of the
Board of Control, which is one of the administrative departments and
agencies of our State Government. Article 693, Revised Civil Statutes,
1925, from which we have theretofore quoted, lists the general powers
and duties of said Board of Control for the government of the State
eleemosynary institution. It is certain, therefore, that ample provi-
sion has been made by general law for the proper application of any
funds appropriated for eleemosynary service by the Legislature of
Texas. Such funds, of course, must be expended and applied in accord-
ance with the lawful regulations and restrictions contained in the
appropriations.

The case of Conley v. Daughters of the Republic, (Sup. Ct.) 156 S. W. 197, involved legislation claimed to be in violation of Section 35, Article 3 of our Constitution.  The State, pursuant to an act of the 29th Legislature, effective January 26, 1905, had purchased the Alamo property in San Antonio, and had delivered same to the <u>care and custody</u> of the Daughters of the Republic of Texas. Said property was to be maintained by said Daughters of the Republic "in good order and repair, without charge to the State, as a sacred memorial," the ownership thereof remaining in the State.  Several years thereafter, at a Called Session of the Legislature in 1911, the general appropriation bill was enacted, and contained the following provision:

|  | "For The Years<br>Ending |  |
|---|---|---|
|  | "Aug. 31, 1929 | "Aug. 31, 1913 |
| "For the improvement of<br>the Alamo property be-<br>longing to the State of<br>Texas, in the City of<br>San Antonio, to be ex-<br>pended under the direction<br>of the Superintendent of<br>Public Buildings and<br>Grounds, upon approval<br>of the Governor . . . . . . . . . . . . | $5,000.00 | -----------" |

Objection was made to said appropriation bill that it was violative of Section 35, Article 3 of our Constitution.  In discussing this objection, Chief Justice Brown wrote as follows:

"To the argument that the direction as to expenditure of the $5,000 is unconstitutional, it is sufficient to say that from this language - 'no bill (except general appropriation bills, which may embrace the various subjects and accounts, for and on account of which moneys are appropriated) shall contain more than one subject, which shall be expressed in its title' - the exception relieves that bill from the limitation and permits the same treatment of each subject of the appropriation bill that would apply if it were embraced in a separate bill.

"It cannot be that a separate and independent

law would be necessary to direct and control the expenditure of every item of appropriation."

Also, regarding the legality of certain provisions contained in an appropriation bill, see the case of Booth & Flinn v. Miller, (Sup. Ct. of Penn.) 85 Atl. 457.

Constitutional provisions on titles of bills must be construed liberally in order to sustain the validity of the title and the statute. Narrow and technical constructions should be avoided. Sutherland Statutory Construction, 3rd Edition, (horack), p. 292, par. 1704.

Also, "in deciding the constitutionality of a statute * * *, every presumption favors the validity of the Act. As is true in cases presenting other constitutional issues, the Courts avoid declaring an Act unconstitutional whenever possible." Id., p. 295, par. 1906.

"All provisions that are incidental or auxiliary to, or in any reasonable sense will promote the object indicated in the title, legitimately may be included in the Act." Id., p. 296, par. 1707.

Also, the following quotation from 59 C. J., p. 812, paragraph 373, is most significant:

"All matters, however, which are germane to, and naturally connected with, the subject announced by the title of an Act and not excluded thereby are covered by it and may validly be included in the statute."

It is therefore the opinion of this department that the provisions of the Legislation under consideration are legal and effective, according to the reading thereof. It is also our opinion that the Board of Control is empowered to activate such abandoned facilities, and to reconvert and maintain them in the manner provided in such legislation.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

L. H. Flewellen
Assistant

LHF:EP